## O'Conner *against* Warner.

4ws223
172  144

Until the Judiciary has fixed the meaning of a doubtful law, upon which rights have become vested, it may be explained by legislative enactment.

The Act of 28th of April 1840, so explains the mechanic's lien law of the 16th of June 1836, that a sheriff's sale upon a lien created by that Act, confers no other or greater title in the premises, than that which was vested in the person in possession at the time the building was erected.

ERROR to the District Court of *Allegheny* county.

G. E. Warner & Co. against James O'Conner & Co. This was an action on the case for the recovery of rent, under the following circumstances: Warner & Co., on the 27th of November 1833, leased certain ground in the city of Pittsburgh from the representative of James S. Stevenson for 10 years from 1st of April 1834. A part of the premises thus held, they assigned on the 6th of September 1838, to Elisha Tucker, for the period of their own term,

[O'Conner v. Warner.]

for the annual rent of $150. Tucker erected a building on the ground thus leased to him. Warner & Co. furnished him with the lumber for it, and filed a mechanic's lien therefor on the 1st of April 1839. There was a proceeding upon this lien, by virtue of which the property was sold by the sheriff on the 22d of July 1839, to O'Conner & Co., who received the sheriff's deed therefor, dated 9th of September 1839. This action was brought by Warner & Co. against the purchasers, to recover the amount of rent due under Tucker's lease, accruing subsequent to the sale. Whereupon two questions arose : 1. What estate in the premises sold did the purchaser acquire, the term which Tucker had, or the fee-simple? 2. If the fee-simple did not pass, could the plaintiff recover rent from the purchaser at a sale made upon his own proceeding, and the proceeds of which he received?

The court below, (Judges Grier and Shaler), ruled both these points for the plaintiff, for whom they directed a judgment.

*Biddle*, for plaintiff in error. The case of *Savoy* v. *Jones*, (2 *Rawle* 350), which gives a construction to the Act of 1806, was decided previous to the Act of the 16th of June 1836, which did not change the principles of the law, and therefore ratified and approved it, with the construction which it had received: then followed the cases of *Bickel* v. *James*, (7 *Watts* 9), and *Holdship* v. *Abercrombie*, (9 *Watts* 52), recognising the former decision. These Acts, then, being in principle the same, so far as regards any question raised in this cause, have received judicial construction, upon the faith of which titles have been predicated. It is not, then, to be presumed, in the absence of clearly expressed intention, that the legislature designed to interfere with rights vested on the faith of a law which had been judicially interpreted. Laws are in their nature prospective, and the danger of giving them a retrospective operation forbids such an interpretation of them, unless it be distinctly expressed. 2 *Watts & Serg.* 249; 12 *Serg. & Rawle* 327, 340; 9 *Watts* 305; 6 *Whart.* 214. A law may be declaratory either of the meaning and intent of a former one, or what shall be the construction of it hereafter. 7 *Johns.* 497. A repeal of the Act of 1836 would not devest titles consummated according to its provisions; although it would put an end to all pending proceedings under it. 12 *Serg. & Rawle* 362; 1 *Hill* (*N. Y.*) 335; 3 *Whart.* 18. The legislature has not the power to destroy a vested title; its power is conservative, not destructive. 2 *Peters* 408; 1 *Watts* 358; 8 *Peters* 25; 1 *Kent's Com.* 455; 1 *Tuck. Black.* 3; 4 *Munf.* 109; 2 *Cranch* 276; 2 *Watts & Serg.* 278; 7 *Watts* 300. The plaintiffs did not disclose at the sale that they sold subject to the payment of the rent; this as between these parties bars them from recovering it: they are estopped. 10 *Watts* 332; 6 *Whart.* 215.

[O'Conner v. Warner.]

*M'Candless* and *Metcalf, contra,* argued that the Act of 1836 was essentially different from the Act of 1806, and had never received any judicial construction; and it was therefore clearly competent for the legislature to declare how it should be construed by the courts, whenever any proceeding under it should be presented to them. This sale then was made under the Act of 1836, which the legislature has clearly provided shall be construed to vest the estate only, which the person in possession of the premises had at the time. If, then, there was but a term of years sold, the purchaser is presumed to know the conditions upon which that term was held by the defendant: it was not incumbent on the plaintiff to give notice of it at the sale.

The opinion of the Court was delivered by

GIBSON, C. J.—It would puzzle those who controvert the principle of *Savoy* v. *Jones,* and the subsequent cases of that stamp, to give a reason for the faith that is in them beyond the apparent hardship of the case. The debt secured by the Act of 1806, was the debt of the building, not of any owner of it; the lien was on the building; the process was against the building; and the building itself, not the builder's interest in it, was directed to be sold. The debt was charged on it, as taxes are charged on unseated land, without regard to the ownership; and we are bound to say the building was sold, like unseated land, without regard to the ownership. To do otherwise, would have required us to interpolate the very provision which has been recently, but incautiously, interpolated by the legislature, and thus perform an act of judicial legislation not less abhorrent to the principles of the constitution, than an act of legislative adjudication. We could not say that the estate in expectancy was excluded from the lien by the spirit of the Act, or that it would have been protected had the case been foreseen. The avowed object was to protect the mechanic or material man without regard to any one else; and that the reversioner or remainderman was intended to be put on a footing with the tenant in possession, is evident from the clause which authorized " any person interested in the building" to call for a formal entry of satisfaction; for it would have been absurd to give him a right to expunge the evidence of the lien if he might not be affected by it. And this liability of separate interests to contribution towards a general burthen, though sometimes attended with hardship in practice, was just in its principle, inasmuch as it was calculated to produce the results which equity produces when it apportions a general charge among owners of the separate parts of a fee in proportion to their relative value and the benefit received by each from the consideration of the encumbrance. Besides this, the injustice of allowing the claimant to follow his materials, or the products of his labour, into the hands of a reversioner or a remainderman, was no greater than the injustice of

IV. — 29

[O'Conner v. Warner.]

allowing him to follow them into the hands of the tenant in possession, who was as much a stranger to the debt, and who did no more than authorize the erection, but without authorizing the contractor to charge the building with the price of it. The law did that; and it was just as unconscionable to affect the ownership of the particular tenant by it, as it was to affect the ownership of his successor who derived equal or greater benefit from the erection. It was for the very reason that the operative had to do with a contractor, and not with the owner, that he was allowed to charge the building without regard to the ownership of it, of which he could know nothing. The fallacy is in imagining that he stands more in privity with the tenant in possession, than with those that are to come after him. He has no connexion with any of them; and therefore it is that the statute allows him to charge the building without discrimination in regard to their particular interests. Nor is such a statute a novelty in the history of legislation. The 21 *Jac.* 1, *c.* 19, subjects a bankrupt's entailed estate to payment of his debts, and makes the conveyance of the commissioners good against the issue in tail; to say nothing of those statutes which enable tenant in tail to make leases for three lives, or to forfeit the estate for treason, or to encumber it with debts to the crown. Our own statute for barring entails by the acknowledgment of an assurance in open court, enables him, not only to disinherit the issue in tail, but also to devest the estate of the fee-simple remainderman. Why, then, should it be thought a thing incredible, that the legislature intended to charge more than the interest of him who caused the building to be erected? Our legislation for almost forty years, breathed one uniform spirit of kindness to the operative; and it was not without our special wonder that we saw it, in 1840, breathe a hostile one. The manifestation of its former kindness is visible in the enlargement of the system so as to embrace ships and even curbstones; and in the gradual diffusion of it over almost the whole State, without changing, or so much as touching, the controverted interpretation. The experienced counsel who prepared the revised Act of 1836, with *Savoy* v. *Jones* before their eyes, saw nothing in it which called for correction. It is supposed, however, that the dayspring of 1840 revealed its moral deformity, and taught the legislature to shift the burthen of its injustice from the shoulders of the innocent reversioner or remainderman, to those of the more innocent purchaser who had paid his money on the faith of laws constitutionally enacted and expounded. No man can assent to a proposition so monstrous; yet it might be inferred from the literal import of the words that such was the design; and it shows the dangerous tendency of legislation so hurried as to produce statutes which are a surprise on those who have enacted them. The section of 1840, even in its prospective operation, goes far to sap the foundation of the mechanic's protection; and we cannot think the legislature

[O'Conner v. Warner.]

was apprised of the drift of the section, when it struck the blow at interests so long and so anxiously cherished. When the mechanic can sell no more than a lease burthened with a rent to the extent of its value, his lien will be worthless; and when a grantor of ground let on a perpetual lease for the very purpose of being built on, enters for non-payment of the ground-rent, he will necessarily hold paramount to mechanics' liens. Or, where the person in possession has but an equitable title, those liens will be postponed to the vendor's claim for the purchase money. There must be many such cases. But whatever the design, a legislative mandate to change the settled interpretation of a statute, and uproot titles depending on past adjudications, or a legislative direction to perform a judicial function in a particular way, would be a direct violation of the constitution, which assigns to each organ of the government its exclusive function and a limited sphere of action. No one will assert that a court would be bound by a mandate to decide a principle, or a cause in a particular way. Such a mandate would be a usurpation of judicial power, and more intolerable in its exercise than a legislative writ of error, because the losing party would be concluded by it without being heard. In the case before us, we are firmly convinced that the legislature did not design to deprive purchasers of their titles acquired under the original Act; but whatever the design, we are bound to give the section a benign interpretation.

Yet we are not compelled by the preceding considerations, to give it an operation entirely prospective. No one has purchased on the faith of a judicial exposition of the Act of 1836, for it has received none. Purchasers have acted on their own interpretation of its meaning, and consequently on their own responsibility. They cannot complain of violated faith given to the accredited act of a constitutional organ; and till the judiciary has fixed the meaning of a doubtful law, the legislature has a right to explain it. The Act of 1836 was susceptible of such explanation. It was not the law which had been before the courts; and the construction given to its predecessors, was not applicable to it with conclusive force. For that reason alone the judgment is sustained.

Judgment affirmed.