## KLAUS and another vs. THE CITY OF GREEN BAY, impleaded, etc.

PARTIES DEFENDANT. (1) *Action against city on contract for erection of school building; Board of Education not a proper defendant.*

CONSTITUTIONAL LAW: STATUTORY CONSTRUCTION. (2) *Statute granting a new remedy, held applicable to existing causes of action, and also held valid.*

1. The board of education of the defendant city is elected by the mayor and council; and among other powers, they may, with the approval

of one-third of the aldermen, enter into contracts for the purchase of school sites and the erection of school buildings thereon. In an action under ch. 150, Laws of 1873, to compel payment by the defendant city of a sum alleged to be due the plaintiff for materials furnished to a contractor for the erection of a school building in said city and actually used in the building: *Held*, that the amount due the contractor on his said contract was an indebtedness of *the city*, and not of the board of education, and such board was not a necessary party to the action.

2. Said ch. 150 declares that "any subcontractor who *shall have done* work, or furnished material," etc., "may maintain" the action there described, which is in the nature of a garnishee proceeding. *Held*, that the action will lie in cases where the work was done or materials furnished *before* the passage of the act; such act being *remedial*, and not disturbing any vested right, nor creating any new liability on the part of the corporation garnisheed. *State v. Atwood*, 11 Wis., 422, and other cases in this court, distinguished.

APPEAL from the Circuit Court for *Brown* County.

The charter of the defendant city (P. & L. Laws of 1870, ch. 436) provides that "the common council shall have the management and control of the finances, except school moneys, and all the other property in (of?) the city," etc. (ch. 4, sec. 3) ; and that "all funds in the treasury, except school, state and county funds, shall be under the control of the common council, and shall be drawn out upon the order of the mayor and clerk, duly authorized by a vote of the common council," etc. (ch. 5, sec. 1). Ch. 12 is entitled "Of Public Schools." The first section thereof provides for the election, by the mayor and common council, of school commissioners, "who shall hold office for two years, unless sooner removed for misconduct or other sufficient cause by a vote of two-thirds of the appointing power." Sec. 2 provides that the school commissioners so elected shall form the "board of education of the city of Green Bay ; " that a majority of them shall form a quorum; and that vacancies in the board shall be filled by the mayor and common council. Sec. 3 authorizes this board to elect a city superintendent of schools. Sec. 4 authorizes it to "elect one of its members president,"

and, among the duties of the president, declares that he shall " countersign all orders drawn by the secretary for the payment of teachers' and janitors' wages, and all other incidental and necessary expenses of said board of education (not including superintendent's salary) ; and in all suits brought by or against the district, he shall appear in behalf of the district, unless some other provision is made by the board of education." Sec. 7 defines the duties of the board of education, one of which is stated as follows : " 5th. To make contracts for all fuel, stationery and articles of furniture required for the use of the schools ; to make all necessary repairs on school houses, not exceeding one hundred dollars in value for any one school house; to make contracts for all incidentals required for carrying on the school houses, such as lighting fires, sweeping school rooms, etc; and such contracts, when executed, shall be paid by orders drawn on the city treasurer, payable out of the school fund, which orders shall be signed by the president of the board of education, and countersigned by the clerk of said board." Sec. 8 is in these words: " Whenever repairs to a larger amount than one hundred dollars shall, in the opinion of the board, be required for any one school house, they shall cause a statement to be made showing the repairs required, and an estimate of the cost thereof, to be laid before the mayor and council; and whenever, in their opinion, another school house or school houses shall be required, they shall cause estimates of the cost of a site for such house or houses, and a plan of the proposed building or buildings, together with the estimates of the cost of the same, to be made, and shall submit the same for the consideration of the mayor and council, who shall forthwith take measures to raise a tax to defray the cost of such repairs, or the erection of such building or buildings, and the purchase of a site or sites, unless there shall be a two-thirds vote of the whole number of aldermen of the city against the same, in which case such proposed repairs shall not be made, nor shall such site or sites be purchased, nor building or build-

ings be erected, and it shall be the duty of said board to enter into contracts for making such repairs, or for the erection of such buildings, or for the purchase of such sites, whenever it shall be made to appear that the necessary tax for the same has been levied and authorized by the mayor and council." Sec. 9 provides that it shall be the duty of the president and secretary of the board to draw orders on the city treasurer, payable out of the school fund, for teachers' and janitors' wages, and all other expenditures authorized by this act.

Ch. 5, sec. 8, provides that "no action shall hereafter be maintained by any person against the city of Green Bay, upon any claim or demand other than a city bond or order, unless such person shall first have presented his claim to the common council of the city." Ch. 13, sec. 14, declares that "no general law of this state, contravening the provisions of this act, shall be considered as repealing, annulling or modifying the same, unless such purposes be expressly set forth in such law as an amendment to this charter."

Ch. 150, Laws of 1873, provides as follows : "Sec. 1. Any subcontractor who shall have done any work or furnished material at the request of or upon contract with a principal contractor, for the construction, repair or removal of any building or machinery for this state, or for any county, town, city, village or school district therein, may maintain an action against such principal contractor and such state, county, town, city, village or school district, in the circuit or county court of the county where such work was done or such materials delivered, by service of a summons and sworn complaint * * stating the facts ; and from the time of such service, such state, county, town, city, village or school district * * shall be liable to such subcontractor for the amount that may be found due or owing by such principal contractor to such subcontractor, with all costs of such action, not exceeding the sum which it may owe to such principal contractor. * * * Judgment shall be rendered in such action against such principal contractor for

the amount found due to such subcontractor, with costs of such action ; also against such state, county, town, city, village or school district * * for the amount for which it shall be liable as aforesaid ; and payment of the amount of any such judgment by such state, county, town, city, village or school district, shall relieve it from that amount of its indebtedness to such principal contractor."

After the act of 1873 took effect, this action was brought against the *City of Green Bay* and one Maynard. The complaint avers, in substance, that on the 30th of April, 1870, the defendant city, through its board of education, duly entered into a written contract with Maynard, for the construction, for said city, of a certain described ward school house; that plaintiffs, in the months of November and December, 1870, furnished lumber and building materials to Maynard, worth $358.60, which were furnished for and were in fact used in the construction of said school house; that Maynard has not paid the debt, nor any part thereof, and that the city is indebted to Maynard on his said contract, in the sum of $1,000. Judgment is demanded against both defendants for said sum of $358.60, with interest, costs, etc.

The defendant city demurred to the complaint, specifying all the grounds of demurrer allowed by the statute; and appealed from an order overruling the demurrer.

*T. R. Hudd*, City Attorney, for appellant, after citing the provisions of the charter of the defendant city relating to that subject, contended that the board of education of said city should have been made a party defendant; that contracts for school buildings in the *City of Green Bay* could be made only by the board of education (28 Wis., 336); that the city seems to be regarded as a consolidated school district, and the board of education a school district board (charter, ch. 12, sec. 4), and that it must be regarded as a corporation for the erection of such buildings and other purposes named; that no part of the school fund (from which this claim must be paid) is at the

disposal of the common council; and that whatever may be the possible ultimate liability of the city (15 Wis., 390), a claim like this should at least go first before the board of education, and be audited or rejected by that board, and that the complaint should show that such were the facts. 2. He argued that the complaint was insufficient for the further reason that it does not show that the claim sued on was ever presented to the common council. See charter, ch. 5, sec. 8, which is not expressly repealed, annulled or modified by ch. 150, Laws, of 1873, as provided by ch. 13, sec. 14. See also 13 Wis., 490; 10 id., 49; 24 id., 594. 3. In regard to ch. 150, Laws of 1873, counsel contended, (1.) That it should not be considered as applicable to a demand or claim existing before its passage, inasmuch as it contains no words giving it expressly a retroactive effect, and the language used properly describes only work done or materials furnished after the passage of the act. 12 Johns., 169; 10 Wend., 114, 363; 3 Barb., 621; 3 Bradf., 249; *State v. Atwood*, 11 Wis., 422; *Seamans v. Carter*, 15 id., 548; *Finney v. Ackerman*, 21 id., 268. (2.) That if the act is retroactive it is void, because it attempts to create a liability or fix a responsibility not existing by law at the time of the passage of the act. 3 Wis., 502; 13 id., 37; Cooley's Con. Lim., 369; 16 Mass., 315.

*Hastings, Greene & Tisdale*, for respondents, argued that ch. 150, Laws of 1873, by its terms, includes this case (*Brigham v. Bigelow*, 12 Met., 268–271); that the language must be allowed its full force unless there is some constitutional objection (*Battis v. Hamlin*, 22 Wis., 672; 29 id., 561); and that a statute providing new remedies or changing old ones, but in no way affecting vested rights or contract obligations, is not *retrospective* although it applies to existing causes of action. Cooley's Con. Lim., 371, note; 1 Kent's Com., 10th ed., 513, note b.; *Wood v. Oakley*, 11 Paige, 402; *Dash v. Van Kleeck*, 7 Johns., 499; Potter's Dwarris, 163, note; *People v. Tibbets*, 4 Cow., 390; *Litch v. Brotherson*, 25 How. Pr., 416; *Shepard v. People*, 23 id., 339;

*Parker v. Kane,* 4 Wis., 1–17; *Smith v. Packard,* 12 id., 372; *Howell v. Howell,* 15 id., 57; *Paine v. Gill,* 13 id., 561; *Paine v. Woodworth,* 15 id., 302; *Bemis v. Clark,* 11 Pick., 452; *Jacquins v. Commonwealth,* 9 Cush., 279; *Darling v. Wells,* 1 id., 509; 16 Barb., 509; 45 id., 210; 15 id., 318; 49 N. Y., 517. 2. Counsel also argued that sec. 8, ch. 5 of the charter, which requires a claim or demand against the city to be first presented to the council before an action can be maintained upon it, is designed merely to prevent unnecessary costs against the city, and that it has no reference to a proceeding in which the city is simply made a party to a suit as garnishee.

COLE, J. The plaintiffs brought this action under the provisions of ch. 150, Laws of 1873. They allege in the complaint that in the months of November and December, 1870, they furnished lumber and building materials to the defendant Maynard, who was a contractor for the erection of a school house for the city, which materials were worth $358.60, and were in fact used in the construction of said school house. They further allege that Maynard has not paid the debt, nor any part thereof, and that the city is indebted to him on his contract for the erection of the school house, in the sum of $1,000 and upwards, which amount is now due and owing from the city. They demand a judgment against the city for the amount due them by the contractor, Maynard, and interest.

The complaint is demurred to on several grounds, only one or two of which do we deem it necessary to notice. It is objected that there is a defect of parties defendant, and that the board of education of the city should have been united in the action. Under the provisions of the city charter, the mayor and common council elect school commissioners, who form the board of education. This board, among other duties, employ teachers; establish rules and regulations for the schools; furnish fuel; make all necessary repairs, not exceeding one hundred dollars, on school houses; and, with the approval of one-

third of the whole number of aldermen, enter into contracts for the purchase of school sites and the erection of school buildings thereon. Ch. 12 of the charter (P. & L. Laws of 1870, ch. 436). Now, as the board of education made the contract with Maynard for the erection of the school house in question, it is claimed that such board is a necessary party to this action. This position we deem untenable. It is very obvious that the board of education is not a distinct and independent corporation by itself, but is a mere branch of the city government. See *Terry v. City of Milwaukee*, 15 Wis., 490. The object of giving the school commissioners chosen by the mayor and common council, general control of the public schools, was doubtless to secure greater efficiency and system in their management and organization than would likely result from placing the schools under the direct supervision of the aldermen of the city. Persons chosen for school commissioners generally have some peculiar fitness and qualifications for the organization of schools; some experience in their management, and some intelligent views as to the course of study and text books best to be adopted — qualifications not often possessed by those who have not at some time been connected with the cause of education and the profession of teaching. But, after all, the school commissioners are merely agents and officers of the city, and constitute a part of the city government, and act for the municipality in matters relating to the public schools. The contracts which the board of education enter into in the discharge of their legal duties, are the contracts of the city, and binding upon it. But it is not essential or proper that the board be a party to an action for the enforcement of these contracts. The city is the responsible party upon the contract made by the board of education with Maynard.

The only other question which we deem it important to notice, is that arising upon the law of 1873 above referred to. It is contended on behalf of the city, that this enactment is, by its terms, prospective in its operation, and was not intended to

apply to a case where the materials were furnished to a contractor prior to the passage of the law. The language upon which this argument is founded, is the following: "Any subcontractor who shall have done work or furnished material at the request or upon contract with a principal contractor, for the construction" of a building for a town or city, may. maintain an action, etc. Now it is said that the words "*who shall have done work,*" etc., plainly refer to the future and not to the past. Of course these words must be construed with reference to the subject matter of this statute, and in view of the object of its enactment. And when considered in that light, we think it is plain that as here used they refer as well to past as to future transactions. The obvious intention seems to have been to afford a remedy to a subcontractor who had done work or furnished materials to a contractor which were used or performed in the construction of a public building for a town, city or village, by means of which such subcontractor might recover his debt from the town, city or village to the amount of its indebtedness to the principal contractor. It is in the nature of a garnishee proceeding, and must be liberally construed. We see no satisfactory reason for holding that the law was not intended to apply to existing cases. These words in a certain class of statutes would undoubtedly be construed as relating to the future, on account of the unjust consequences which would result from a different interpretation. But there is nothing in the language, when considered with reference to the object of this law, which requires that they should have this restricted application. This and similar language is frequently used in statutes which have been held to operate retrospectively, and we have no doubt the legislature intended that the remedy should apply to a case like the one before us. *Brigham v. Bigelow*, 12 Met., 268.

But it is further objected that if the legislature intended the law to apply to past transactions and to cases existing at the time of its passage, then it is unconstitutional and void. If

the character of this enactment is regarded, there would seem to be no difficulty in sustaining it. It is a remedial statute, and is subject to far different rules and principles than those which apply to penal enactments, or those attempting to destroy vested rights. If this statute, instead of providing a remedy, attempted to disturb vested rights, or to create a debt or obligation where none existed before, it would be open to the criticism of the counsel for the city. But that is not its purpose or design. It imposes no new liability upon the city, but merely provides that the city shall pay its indebtedness due Maynard to the latter's creditor. It is strictly a remedial statute, affording new means for enforcing an existing obligation. And the doctrine is well settled, that a remedial statute may have a retroactive effect, providing it does not impair contracts or disturb vested rights. This feature in the law before us, which only gives a remedy in the nature of a garnishee proceeding against the city, renders the decisions in *State v. Atwood,* 11 Wis., 422 ; *Seamans v. Carter,* 15 id., 548 ; and *Finney v. Ackerman,* 21 id., 268, entirely inapplicable. It is unnecessary to dwell upon the distinction in the cases ; but an examination will show that the doctrine of those cases does not condemn a law which is purely and strictly remedial, creating no new rights, destroying no vested interests, impairing no obligations, imposing no liabilities or penalties where none existed before its passage. If the city pays the amount of its indebtedness to Maynard on a judgment recovered by the plaintiffs against him, it will be discharged from all liability to Maynard. That is all there is of this law, and it seems to us it was entirely competent for the legislature to enact it. It is noticeable that Maynard is not here objecting that the debt due him from the city shall be so applied.

We think the complaint states a cause of action, and that the demurrer was properly overrruled.

*By the Court.*—Order affirmed.