VANDERPOOL and others vs. THE LA CROSSE & MILWAUKEE RAILROAD COMPANY, impleaded with BLOOMER.

*Constitutional Law: Statutory Construction: Retrospective Statutes: Mechanics' Liens: Limits of Legislative Power: · Effect of Judgment.*

1. Statutes are never to be construed so as to operate retrospectively, unless such legistative intention is unmistakable.

2. Ch. 215, Laws of 1861, entitled "An act to *amend* ch. 153 of the R. S., entitled 'Of the lien of mechanics and others,'" declares that the provisions of said ch. 153 "shall be *construed* in all cases to apply to the construction of any bridges erected in this state, or any repairs made thereon, or materials furnished therefor." *Held*, that the act, whether declaratory or amendatory, did ·not operate retrospectively, so as to give a lien for labor or materials furnished for a railroad bridge constructed before its passage; and especially must it be so held in view of the fact that the supreme court of this state had previously decided that ch. 153, R. S. 1858, did not give such a lien.

3. Whether the legislature could give such a lien in favor of a subcontractor, valid as against the title remaining at the passage of the act in the property owner for whom the building was erected, for labor or materials furnished before the passage of the act, limiting it to the amount still due and unpaid by such owner to the principal contractor when the act was passed, is not here decided. ·

4. A former judgment of the court below in favor of the plaintiffs as subcontractors for the construction of a railroad bridge, and against the principal contractor and the railroad company, upon their default to answer, awarding plaintiffs a lien upon such bridge, was reversed by this court, on the appeal of the company, at the January term, 1860, on the ground that there was no law giving such a lien. The clerk's entry of the decision here was, that "the judgment was reversed, and the cause remanded for a *venire facias de novo*;" and, upon the record being remitted to the court below, a new trial was had in May, 1863, and the same judgment rendered as upon the first trial. On appeal from the second judgment, this court is of the opinion that its former decision in the cause was final as to the right of the plaintiffs against the company, and that it would have been beyond the power of the legislature to give plaintiffs a lien upon the company's bridge for the amount of their demand; but the decision is not rested upon that ground.

APPEAL from the Circuit Court for *Juneau* County.

The case is thus stated by Mr. Justice TAYLOR, in his opinion as originally prepared:

"This action was commenced on the 7th day of July, 1858, against the railroad company, the present appellant, and L. B. Bloomer. The plaintiffs in their complaint claimed that the defendant Bloomer was contractor for the construction of a railroad bridge for the railroad company; that the plaintiffs, as subcontractors, had furnished a large amount of timber and lumber to said contractor, which was intended for and was used by said contractor in the construction of the said bridge; that the contractor had failed to pay for the same, and there was due from Bloomer to the plaintiffs on account of the timber and lumber so furnished, on the 19th of October, 1857, the sum of $1,964.26; that they had given the railroad company notice of their claim, and filed a lien therefor, claiming a lien for the amount thereof upon the said railroad bridge; and that, at the time of the service of said notice, there was due or to become due from the railroad company to the said Bloomer, on his contract for the construction of said bridge, the sum of $5,000, and upwards. The plaintiffs in their complaint prayed judgment against the said defendant Bloomer and the said railroad company for the said sum of $1,964.26, and interest thereon from the 19th day of October, 1857, together with costs, and further that said judgment be declared to be a lien upon the said railroad bridge, and upon the premises described in the complaint, upon which the same stood, to the extent of the right, title and interest of said railroad company in and to said bridge and premises, before any other lien which originated subsequent to the commencement of said bridge, as provided by the revised statutes of 1849, ch. 120, and the amendments thereto; and further prayed that said bridge, and all the said right, title and interest of the railroad company, be sold according to law to pay such judgment.

"Due proof of service of the summons and of the filing of a notice of the object of the action appears to have been made;

and upon the 27th of October, 1858, a judgment was entered in favor of the plaintiffs, adjudging that they recover of the defendant Bloomer the sum demanded in the complaint; and it further adjudged that said judgment was a lien upon the bridge and premises described in the complaint, and directed a sale of all the right, title and interest of the railroad company in and to said bridge and premises to satisfy said judgment.

"Upon this judgment the railroad company alone brought a writ of error to the supreme court; and, at the January term, 1860, this court reversed said judgment, holding that the plaintiff had no lien upon said railroad bridge and the premises on which the same stood, under the then existing law of this state. The case is reported in the 11 Wis., 124. The grounds of the decision were, that ch. 120, R. S. 1849, and the laws amendatory thereof, including ch. 153, R. S. 1858, did not give a lien upon a railroad bridge.

"The entry in the case, as reported, is simply that the judgment is reversed, with costs; but the entry of the clerk in his minutes is, 'Judgment reversed, with costs, and a *venire facias de novo* awarded.'

"The case was remitted to the circuit court, and afterwards, on the 7th of May, 1863, the same judgment was entered against the railroad company and the defendant Bloomer, which was entered October 27th, 1858.

"From so much of this last judgment as adjudges that the plaintiffs were entitled to a lien upon the bridge of the railroad company for the amount of the debt due them from Bloomer, the railroad company appealed to this court. Upon this appeal the case was once argued at the January term, 1865, but was not then decided, because two of the judges of this court were then interested in the case. Both parties have permitted the case to rest until the present term, when it was again argued and submitted for decision."

For the appellant, a brief was filed by *Melbert B. Cary*, of

counsel, and there was oral argument by *John W. Cary.* They contended, 1. That the question whether plaintiffs had a lien upon the railroad bridge under the statutes in force when the former judgment was rendered, was *res adjudicata* by virtue of that judgment, and the court is bound by that de cision even if it should now consider it erroneous. *Parker v. Pomeroy,* 2 Wis., 112, and cases there cited; Cooley's Con. Lim., 48, and cases there cited. 2. That the subsequent declaratory statute of 1861 can have no effect on the rights of the parties. (1) Ch. 153, R. S. 1858, gave a lien only for labor done and materials furnished *after* its enactment. Plaintiff's right to a lien, if any, accrued under the statutes of 1849 and 1855. These were repealed by the revision of 1858, but with an express reservation of rights accrued under them. R. S. 1858, ch. 191, p. 1037. The act of 1861 merely construes ch. 153, R. S. 1858, and not the former statutes. (2) After the court has construed a statute, no subsequent legislative construction can bind the court, especially in the same case. *Parker v. Pomeroy, supra; Haley v. Philadelphia,* 68 Pa. St., 45. (3) The act of 1861 cannot have a retroactive operation. Cooley's Con. Lim., 93, 94; *Greenough v. Greenough,* 11 Pa. St., 494; *Reiser v. Tell S. F. Association,* 39 id., 137; *Calhoun v. McLendon,* 42 Ga., 405.

*S. U. Pinney* and *L. S. Dixon,* for the respondents, argued, 1. That as ch. 153, R. S. 1858, was merely a reënactment of the previous acts of 1849 and 1855, touching mechanics' liens, and not a new law, the act of 1861 in effect construes the statutes under which the lien was claimed. 2. That the act of 1861 was plainly designed to have a retroactive operation; and statutes which merely give an additional remedy or make the existing one more effective will be liberally construed, and words therein not expressly prospective will be applied to a pending proceeding. *People v. Tibbits,* 4 Cow., 384; *People v. Clark,* 7 N. Y., 385; *Burch v. Newbury,* 10 id., 375, 393; *Ex parte Treacy,* 59 Barb., 525; *Dickerson v. Cook,* 16 id., 509. 3. That

the act was a remedial one, recognizing the existence of an equitable right, and giving a remedy where none was held to exist before, and it should be liberally construed to advance the remedy; and that, as it adjusts the rights of the parties as near as possible to natural justice, and stands on the same principles of equity and justice as are recognized by lien laws generally, it cannot, in the absence of a constitutional prohibition against retroäctive legislation, be held invalid so far as it is retroäctive.   Cooley's Con. Lim., 388–9, and cases there cited; *Bolton v. Johns*, 5 Barr, 145; *Bright v. Boyd*, 1 Story, 478; 2 id., 607; *Ross v. Irving*, 14 Ill., 171; *Underwood v. Lilly*, 10 Serg. & R., 97; *Bleakney v. Bank*, 17 id., 64; *Weister v. Hade*, 52 Pa. St., 474; *Booth v. Booth*, 7 Conn., 350; *Norton v. Pettibone*, id., 319; *Goshen v. Stonington*, 4 id., 224; *Mather v. Chapman*, 6 id., 54, 58; *Welch v. Wadsworth*, 30 id., 149.   See, also, Sedgw. on Stat. & Con. Law, 198, 202, 666 et seq.; *Satterlee v. Matthewson*, 2 Pet., 413; *S. C.*, 13 S. & R., 133, and 16 id., 169; *Watson v. Mercer*, 6 id., 49; *Barnet v. Barnet*, 15 id., 72; *Mercer v. Watson*, 1 Watts, 330; *Hepburn v. Curts*, 7 id., 300; *Watson v. Bailey*, 1 Binn., 470; Cooley's Con. Lim., 372.  4. That if the act of 1861 was a valid retroäctive act giving a new remedy in all cases still pending, the doctrine of *res adjudicata* has no application. That doctrine rests on the want of jurisdiction in the court, on a second appeal, to review and reverse its decision on the former appeal. *Washington Bridge Co. v. Stewart*, 3 How., U. S., 413.   But in this case respondents are not required to deny that the former decision herein was entirely right when made.

TAYLOR, J.  The respondents claim that the present judgment should be affirmed, notwithstanding the decision of this court upon the writ of error from the first judgment, upon the sole ground that, after the decision upon the former judgment and before judgment was again rendered on October 27, 1863, the legislature passed ch. 215, Laws of 1861, entitled, " An act

to amend ch. 153 of the revised statutes, entitled, ' Of the lien of mechanics and others.' " After the enacting clause, the following is the whole of the chapter: " Section 1. The provisions of ch. 153 of the revised statutes, entitled, ' Of the lien of mechanics and others,' shall be construed in all cases to apply to the construction of any bridge erected in this state, or any repairs made thereon or material furnished therefor. Section 2. This act shall take effect and be in force from and after its passage."

It is contended by the respondents that this act was intended to be retrospective, and to give a lien upon all railroad bridges erected before as well as after its passage; and that, by virtue of its retrospective effect, it gave validity to the lien claimed by the plaintiffs for the material furnished for constructing the bridge in question in the year 1857 and before ch. 153, R. S. 1858, took effect.

To this claim on the part of the respondents the appellant makes the following objections:

1. That as to this case, even though the statute could be construed to act retrospectively, it cannot apply, because as to this defendant this court had already decided that the law as it was before the passage of this act, did not give the plaintiffs any lien for their claim upon a railroad bridge; and that such adjudication was final in the action. The order of this court that a *venire facias de novo* should issue, can have no effect, as this defendant had made default in the action, and no further action could have been had in the court below against this defendant except to file the remittitur in the case reversing the judgment as to it.

2. That this act cannot be construed to have any retrospective effect, and especially that it cannot be so construed as to act upon pending actions.

3. That if it can be construed to act retrospectively, it is unconstitutional and void, so far as it undertakes to affect past transactions.

Vol. XLIV. — 42

4. That if the court can give this chapter a retrospective effect, it cannot have that effect upon transactions which were completed before the enactment of ch. 153 of the revised statutes of 1858, that being the chapter which it purports to amend or construe.

The construction we think must be given to the amendatory act of 1861 renders it unnecessary to decide the very grave question, whether the legislature had the power, by either an amendatory act or an act declaratory or explanatory of the existing laws upon the subject of liens, to give a lien upon the property of an individual for work or materials furnished in the construction of a building by a subcontractor, or other person not employed by him to do such work or furnish such materials, previous to the time of the enactment of such law. We are not prepared to say that the legislature could not pass a valid law giving such lien, limiting the same to the amount which was due and unpaid by the owner of the property to the person who had constructed the building for him at the time of the passage of the law, as against the title remaining in the owner at the time of its passage. Such an act would, however, in our opinion, approach nearer the line of prohibited legislation than any case which has been cited by the very learned counsel for the respondents on the argument of this case. The case of *Bolton v. Johns*, 5 Barr, 145, which was considered the strongest case cited for the respondents, was the case of the contractor against the owner of the property. There the relation of debtor and creditor existed between the owner and the person claiming the specific lien under the law, and Chief Justice GIBSON regards this relation as of great importance in the determination of the case. He says: " So far as *regards the parties to the contract* to build, the enactment of the statute in question was clearly constitutional. No alteration of their rights was proposed, further than to give a specific remedy against the property, in addition to the remedy which the contractor had against it indirectly by action; and

retrospective laws have always been sustained where they touch not the right but the remedy." The case of *Satterlee v. Matthewson*, 2 Peters, 413, 13 S. & R., 133, and 16 id., 169, which is much relied upon by the respondents, was an action of ejectment, in which the defendant had entered into possession in fact as the tenant of the plaintiff, but had afterwards purchased a title which he claimed was a better title than that of the plaintiff. The case had been once tried, and, upon appeal, the supreme court of Pennsylvania held that the relation of landlord and tenant should not be deemed to exist between the parties, because the plaintiff's title was what was called a Connecticut claim, and the title claimed by the tenant was one derived from the state of Pennsylvania. The case was sent back for a retrial, and, before the retrial took place, the legislature passed a law, and by the express terms of the act it was made applicable to pending actions, declaring " that the same relation of landlord and tenant should exist and be held as fully and effectually between Connecticut settlers and Pennsylvania claimants as between other citizens of the commonwealth." After the passage of this act, the case was again tried, and the plaintiff recovered, the court holding that the law applied to the pending case, and that the defendant, having entered as the tenant of the plaintiff, could not set up his after-acquired Pennsylvania title to defeat the plaintiff's claim. This judgment was affirmed in the supreme court of the state. It was appealed to the supreme court of the United States, on the ground that the statute violated the provision of the constitution of the United States prohibiting any state from passing laws impairing the obligation of contracts. It was affirmed in that court, because, as the court say, it did not impair any contract, but, on the contrary, validated the contract between the landlord and tenant. Justice WASHINGTON, in the opinion of the court, says, speaking of the contract of lease between Satterlee and Matthewson: "It is that contract which the act declared to be valid, in opposi-

tion to the decision of the supreme court; and, admitting the correctness of that decision, it is not easy to perceive how a law which gives validity to a void contract can be said to impair the obligation of that contract." It was upon this ground alone that the supreme court affirmed the judgment of the supreme court of Pennsylvania. That court did not pretend to decide whether the law was a constitutional law or not, but rested its judgment on the ground that the law was not objectionable to the charge that it was unconstitutional because it impaired the obligation of a contract. The same learned judge, in another part of his opinion, seemed to approve of the strong denunciation of the law by the counsel for the appellant. He says: "Now this law may be censured, as it has been, as an unwise and unjust exercise of legislative power; as retrospective in its operation; as the exercise by the legislature of a judicial function; and as creating a contract between parties where none previously existed. All this may be admitted; but the question we are now considering is, Does it impair the obligation of the contract between the state and Wharton or his alienee?" I cite these portions of the opinion of the supreme court of the United States to show that the court did not, either directly or indirectly, approve of the decision of the supreme court of Pennsylvania.

Judge Cooley, in his work on Constitutional Limitations, p. 376, refers to this case, and approves of the decision of the supreme court of Pennsylvania, and puts it on the ground "that its purpose and effect was to remove from *contracts which the parties had made, a legal impediment to their enforcement.* There would seem to be no doubt, in the light of the other authorities we have referred to, that the conclusion reached was the only just and proper one."

It is possible that the legislature has the power to pass a valid act giving all creditors a lien upon the property of their debtors, subject to the constitutional provision for exemptions, from the date of the creation of their debts, and give the act

a retrospective effect; but no court would hold that such act could operate retrospectively so as to divest a title which had been acquired in good faith from the debtor before the passage of the act. Such an act might come within that class which relates to the remedy which a man may have to collect his demands. In the supposed case, and in the cases cited by the counsel for the respondents, the relation of debtor existed, or would exist before the passage of the law which gave the new remedy.

This court held in the case of *Klaus v. The City of Green Bay*, 34 Wis., 628, that the legislature could pass a valid act to compel a debtor to pay his debt to the creditor of his creditor, and that such act could rightfully be made applicable to past transactions. The act in that case was construed to be in the nature of a garnishee proceeding, and that it made no new contracts and created no new liabilities. It simply provided that the debtor should pay what he owed to one man, to another who was justly entitled to it, because he was the creditor of that other for an equal amount. That act provided for the protection of the debtor against the costs and expenses of the litigation to procure the application of the money he owed to the purpose intended by the law. In that case the action was commenced after the passage of the act, and the question whether the act could apply to pending litigations or not, was not decided.

The cases of *Sullivan v. Brewster*, 1 E. D. Smith, 681, 684, and *Miller v. Moore*, id., 739, were actions brought after the law giving the lien to the subcontractors was passed; and the law expressly provided that it should only apply to work done and materials furnished after the passage of the act. Possibly the reasoning of the court in those cases would lead us to believe that that court would have held the law constitutional if it had provided that parties who had, previous to the passage of the act, furnished materials and performed labor as subcontractors in the erection of a building, should

have a lien upon the same for their demands to the extent of the amount due from the owner to his principal contractor; but there was no such question in these cases, and therefore it was not decided.   I think there is a marked distinction between a law which creates a lien upon the property of an individual in favor of a party to whom he owes no debt, and a law which simply requires that he shall pay what he owes to the creditors of his creditors.   The act creating the lien where none before existed, and in favor of one to whom the owner owes no debt or duty, is placing an unjust incumbrance upon his property, and might render it impossible for him to pay the debt at all.   In this state it has always been considered a harsh remedy to allow a creditor to seize the debtor's property to satisfy his debt before judgment; and it is an extreme stretch of legislative power to subject the property of an individual to an incumbrance for debts which he did not contract and does not owe, and the amount of which is not determined by the judgment of any court, by an act having a retrospective operation and affecting past transactions, if it be not unconstitutional for the reason that it is an attempt to create contracts and liabilities which can only be created by the consent of the parties, or by force of the laws in existence at the time of the transaction.   Such an act, when applied to past transactions, creates in substance the relation of debtor and creditor where none before existed;  binds the property of an individual for a debt which he never incurred, and which he is neither legally nor equitably bound to pay; and, if applied to pending litigations, creates a cause of action in favor of the plaintiff, which did not exist when his action was commenced.   Such a statute comes very near, if not quite, within the rule stated by Judge Cooley in his work on Constitutional Limitations (p. 369): "that he who was never bound, either legally or equitably, cannot have a demand created against him by mere legislative enactment."   *Medford v. Learned,* 16 Mass., 215; *People v. Supervisors of Columbia County,* 43 N. Y., 135.

As was said above, we do not put our decision of this case upon the unconstitutionality of the law in question as applied to past transactions and pending litigations; and what has been said thus far upon the subject, has been said for the purpose of showing that the law, if made to retroäct, would be a harsh law, especially as applied to pending litigations, and it is therefore the duty of the court to limit its action to future transactions, unless by its language it is clear that the legislature intended it should have retrospective action as well as prospective.

The rule applicable to the construction of statutes, as laid down by the authorities, is, that statutes are never to be construed to act retrospectively unless the intention that they should so operate is unmistakable. Smith's Commentaries, p. 679, and note, with cases cited; Potter's Dwarris on Stat. Con., p. 162; Cooley's Constitutional Limitations, p. 62. And Sedgwick on Stat. & Con. Law, p. 164, lays down the English rule thus: "The principle is one of such obvious convenience and justice, that it must always be adhered to in the construction of statutes, unless in cases where there is something on the face of the enactment putting it beyond doubt that the legislature meant it to operate retrospectively;" and then remarks: "This principle may have been lost sight of in some cases, but has on the whole been steadily adhered to." The rule above stated has been affirmed by this court in *Seamans v. Carter*, 15 Wis., 548; *Finney v. Ackerman*, 21 id., 269; *Rheinstrom v. Cone*, 26 id., 163; *Austin v. Burgess*, 36 id., 186-9; *State v. Atwood*, 11 id., 422. In the last case, the late learned Chief Justice Dixon says: "It is a well settled rule of construction, that statutes are not to be construed retrospectively, or to have a retrospective effect, unless it shall clearly appear that it was so intended by the legislature, and not even then, if such construction would impair vested rights." This language of the late learned chief justice was quoted with approval by the present chief justice in *Austin*

*v. Burgess, supra.* Sedgwick, in his work above cited, on p. 166, after commenting upon the rule as laid down by both the English and American courts, says: "It is in this country considered competent for the state legislatures to pass laws having a retrospective effect; the only judicial check on the power being that the courts refuse to give statutes a retrospective construction unless the intention is so clear and positive as by no possibility to admit of any other construction. But, on the other hand, it is equally true that they are generally discountenanced, and that the desire and effort of the courts is always to give a statute a prospective operation only." The learned author, on pp. 166–169, gives instances of cases in which the courts have held laws to have only a prospective operation, many of which more clearly indicated that the intention was to give them a retrospective operation than the one now under consideration. If it be insisted that the act under consideration was a declaratory act, we do not think that fact changes the rule, when it is admitted that what is called a declaratory act is clearly an act giving new rights which did not before exist, and especially when such act is passed after the highest court of the state has declared that the law, as it was, did not give the rights which are intended to be given by the new act. In *Lambertson v. Hogan,* 22 Pa. St., 22, the court say: "The furthest the court has gone is in *O'Conner v. Warner,* 4 W. & S., 223, where it was held that until the judiciary has fixed the meaning of a doubtful law, upon which rights have become vested, it may be explained by legislative enactment. But in that case it is strongly intimated, if not directly decided, that where the construction is not doubtful, particularly where it has been under judicial cognizance, no subsequent act of the legislature, whether it assume the form of an explanatory act or whatever shape it may take, as using the words 'it shall not be construed,' which is now the usual formula, it cannot affect or change previous rights already fixed and settled

Statutes must be construed as operating on future cases alone, except where they are designed to explain a doubtful statute, in which case they deserve and always will receive the most respectful attention from the judicial branch of the government." If the act of the legislature was intended to set aside the construction of the lien laws as already interpreted and construed by this court, and to compel this court to change its construction, without change of the law by legislation, then the law would be unconstitutional, as a usurpation of judicial action. Judge Cooley, pp. 93, 94, in his work above cited, says: "It is always competent to change an existing law by a declaratory statute; and where it is only to operate upon future cases, it is no objection to its validity that it assumes the law to have been in the past what it is now declared that it shall be in the future. But the legislative action cannot be made to retroäct upon past controversies, and reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be an exercise of judicial power, but it would be its exercise in the most objectionable and offensive form; since the legislature would in effect sit as a court of review to which the parties might appeal when dissatisfied with the rulings of the courts." These remarks of the learned judge would apply with great force to the case at bar, if we were to hold that the act of 1861 was simply declaratory and retrospective, and not amendatory and prospective. The effect of such a construction of the statute would be to place the legislature in the attitude, with respect to this court, of saying: "You have given a wrong construction to the lien laws of this state, and you must construe them hereafter, in all cases now pending, and hereafter to be commenced, as we understand them, and as now declared by us to be the true construction. We don't propose to amend the law so as to make it applicable to the cases you have said it was not applicable to; but we say you have misconstrued the present laws; and for the future, you must construe them

according to our view." Such an attitude on the part of the legislature would be a clear assumption of judicial power, and could not be sustained by any respectable court. If, however, this statute, in form declaratory, be construed to be amenda-- tory of the present law, and a declaration of what it shall be after the passage of the act, it loses all of its offensiveness, and does what the legislature have the undoubted power to do — declares what the law shall be in the future, and not what it has been in the past. In further commenting on this subject, on p. 94, Judge Cooley says: "The legislature cannot set aside the construction of the law already applied by the courts to actual cases, neither can it compel the courts for the future to adopt a particular construction of a law which the legislature permits to remain in force. 'To declare what the law is or has been, is a judicial power; to declare what the law shall be, is legislative. One of the fundamental princi- ples of all our governments is, that the legislative power shall be separate from the judicial.' If the legislature would pre- scribe a different rule for the future from that which the courts enforce, it must be done by statute, and cannot be done by a mandate to the courts, which leaves the law unchanged, but seeks to compel the courts to construe and apply it, not ac- cording to the judicial, but according to the legislative judg- ment. But in any case the substance of the legislative action should be regarded rather than the form; and if it appears to be the intention to establish by declaratory statute a rule of conduct for the future, the courts should accept and act upon it, without too nicely inquiring whether the mode by which the new rule is established is or is not the best, most decorous and suitable that could have been adopted."

In *Reiser v. Tell Saving Fund Association*, 39 Pa. St., 137, in speaking of the act under consideration in that case, the court say: " It is therefore in its very terms an expository act. It is an interpretation by one legislature of a statute written by another nine years before; and therefore an adju-

dication of the private rights which have arisen under it. And yet the former legislature said nothing like this, and nothing from which this could be inferred. The legislature have no such authority over us as to change the laws of language. If given language does not express a given meaning, they may give us other language that does; but this will not change the meaning of the former language. In the very nature of language that is impossible. It is with and by virtue of the new expression that we get the new meaning, and, the meaning of law being the law itself, *the law can be no older than the effectual expression of it.* We speak, of course, only of statute laws; for customary or common law must be in actual operation before it can be authoritatively ascertained and expressed." See also *Menges v. Dentler*, 33 Pa. St., 495; *West Branch Boom Company v. Dodge*, 31 id., 285–8. In the last case cited, the court questions whether in any case a mere declaratory statute can operate retroactively.

The act of 1861, above quoted, shows upon its face that the legislative intention was not to enforce upon this court a construction of the law which it could not bear, and which this court had already declared it could not. The title of the act shows this. The title is, " An act to amend chapter 153 of the revised statutes, entitled, ' Of the lien of mechanics and others,' " and although the body of the statute which follows is declaratory in form, we are at liberty to hold, from the title they gave to their act, that the legislature intended simply to amend the act so that thereafter it should include railroad bridges as one of the kinds of buildings which should be the subject of the lien given by the statute as so amended. It is quite probable that the promoters of the legislative amendment had other intentions in view. This court has, however, nothing to do with the intentions of interested parties who may have prompted the passage of a law. We have only to deal with the intentions of the legislature as expressed by it upon the face of the act.

Such a construction of the statute is not in conflict with its language, is in harmony with its object as expressed by its title, and makes it a just and beneficial law. To give it the construction contended for by the respondent, renders it obnoxious to the charge of being a usurpation of judicial power on the part of the legislature; and if it be construed as not only retroactive, but applicable to the pending litigation in the case at bar, it is obnoxious to the charge of being an attempt on the part of the legislature to reverse the decisions of this court by legislative act.

In giving retrospective power to an act of the legislature which is simply declaratory, the courts have usually held that they should not apply to pending litigations, except in cases where the act specially included them. In *Dash v. Van Kleeck*, 7 Johns., 477, Justice THOMPSON, who delivered the opinion of the court, says: " Giving the act now under consideration a retrospective operation would manifestly be productive of these consequences; for it not only takes away a vested right, but punishes and endamages the plaintiff in the payment of costs. If his action is defeated, and his right of recovery taken away by this statute, he not only loses his own costs, but will be obliged to pay costs to the defendant. It never can be presumed, from the general words of this statute, that the legislature intended that it should work such injustice. Nothing short of the most direct and unequivocal expressions would justify such conclusion." See also *Lambertson v. Hogan, supra; Ogden v. Blackledge*, 2 Cranch, 272.

Without resting the decision in this case upon the point, we are strongly of the opinion that the former decision of this court in this case was a final decision as to the right of the plaintiffs as against the railroad company; and that it would have been beyond the power of the legislature to have given the plaintiffs a lien, for their demands against Bloomer, upon the bridge of the railroad company, had it undertaken to do so by an act clearly showing such intention.

Vanderpool and others vs. La Crosse & Milwaukee R. R. Co., imp.

Judgment had been rendered in the court below against both Bloomer and the railroad company upon default of the parties to answer. The railroad company alone took a writ of error to this court; and, upon the hearing of that writ, this court decided that there was no law which gave the plaintiffs a lien upon the property of the railroad. This judgment was based upon the facts stated in the plaintiffs' complaint, and the law applicable thereto. When the record was remitted to the court below, no further trial could be had; there was nothing to try. This court had said there was no cause of action stated against the railroad company; the company had put in no answer and made no defense; and it would seem that there was nothing for the court below to do, on the *remittitur* from this court, except to file the same, and possibly enter a formal order reversing the judgment of the court below as to the railroad company, and dismissing the action as to it, with costs. It does not seem to us that, after the *remittitur* from this court, it can be said that the case remained in the court below awaiting trial as against the defendant company. If the judgment of this court was final so far as to do away with any new trial in the court below, then it is not urged even by counsel for the respondents that the law of 1861 could have any application to this case.

We prefer, however, to place our decision of this case upon the ground that the act of 1861, whether considered as a declaratory or amendatory act, was not intended to and does not apply to past transactions, and does not, therefore, change the rights of the parties to this action.

*By the Court.*—That part of the judgment of the circuit court which adjudges that the plaintiffs have a lien for the amount of their judgment against the railroad bridge and premises of the appellant, described in said judgment, and which adjudges that the same shall be sold to pay the amount of such judgment with the costs of sale, is reversed, with costs.

RYAN, C. J., took no part.