Cross et al. vs. The City of Milwaukee et al.

CROSS and another vs. THE CITY OF MILWAUKEE and another.

Chap. 395, Private and Local Laws of 1862, and chap. 115, General Laws of 1863, which provide for a re-assessment of real and personal property in the city of Milwaukee for the year 1857, and a relevy of the city taxes for that year, were valid enactments.

Where buildings, existing upon plaintiffs' lots in 1857, were destroyed by fire before such re-assessment, and were valued higher in such new assessment than in that made in 1857, it must be presnmed, in the absence of any evidence or allegation to the contrary, that the re-valuation is correct, and that the assessor who made it had personal knowledge of the real value of such buildings in 1857.

The fact that such buildings had been so destroyed, did not affect the liability of the property to taxation upon its actual value as it existed in 1857.

APPEAL from the Circuit Court for *Milwaukee* County.

This was an action to cancel a certificate of sale of lot seven and the south one-third of lot eight in block seven of the city of Milwaukee. The complaint alleges that the plaintiffs are now the owners of said lots, and in possession of them ; that the plaintiff *Cross* owned them during the whole of the year 1857, and has ever since owned them, or some interest in them ; that in the assessment roll or tax list of the city of Milwaukee and the county of Milwaukee for 1857, said lots were valued and taxed separately, to-wit : lot seven was valued at $7,000, and the buildings thereon at $4,000, and the south one-third of lot eight was valued at $2,075, and the buildings thereon at $1,000 ; that said *Cross*, in January, 1858, paid to the then treasurer of the city all taxes or assessments then levied or assessed on said lands for state, county and school purposes, and for city purposes, to-wit, the sum of $989.59, being $775.14 upon lot seven, and $214.45 upon said south one-third of lot eight; that on the 30th of December, 1860, the buildings which were on said lands in 1857, were destroyed by fire ; that in 1863, before the 1st of September of that year, certain persons pretending to be and act as assessors of the city of Milwaukee, and to act under the provisions of chapter 395, Pr. & L. Laws of 1862, and ch. 115, Gen. Laws of 1863, made out what they called an assessment roll of the lands and prop-

erty in said city for 1857, in which said lot seven and south one-third of lot eight were valued, together with the buildings thereon, and the valuation of said buildings was $10,000, being $5,000 more than their valuation in the assessment roll for the year 1857 made by the assessors for that year, as above stated, after the same was reviewed and corrected as required by law; that a pretended tax list was made out and delivered to the city treasurer on the 7th of September, 1863, based upon said pretended assessment roll, and in such list the plaintiffs' said premises were inserted, with a memorandum to the effect that the valuation of them had been increased $5,000 above that given in the assessment roll of 1857, and opposite said premises in said tax list was set a tax of $250; that at the top of each page of said pretended tax list were the following words and figures, to-wit: " CITY OF MILWAUKEE. Tax list made out in accordance with the act approved June 18th, 1862, and the act of March 27th, 1863, for levying the tax of the year 1857 ;" that at the end of said pretended tax list was a certificate as follows: "I hereby certify that the foregoing is the supplementary tax list for the year 1857, containing a list of all those lots and pieces of land upon which the taxes were unpaid for the year 1857, and those lots and pieces of land the taxes upon which have been increased by the levy under this act; also of the person and companies or corporations charged with personal tax under this act, and who have no credits equal to or greater than the amounts charged against them. Milwaukee, September 7th, 1863. (Signed) GEORGE G. DOUSMAN, Clerk of the City of Milwaukee." " To the treasurer of the city of Milwaukee : The foregoing amounts do not include the seven per cent. per annum from the 1st of July, 1858, to the 1st of May, 1863, which should be added to the same, and which the treasurer is directed to collect. Milwaukee, September 7th, 1863. (Signed) GEORGE G. DOUSMAN, City Clerk;" that there was a warrant attached to said tax list, such as is prescribed by said act of June 18th, 1862 ;

that said city treasurer, by virtue of said tax list and warrant, sold plaintiff's said premises together on the 15th of October, 1863, at public auction, to the city of Milwaukee for $331.32, being the amount of the pretended taxes and charges against the same as set out in said tax list, which included seven per cent. interest on said sum of $250 from July 1st, 1858 to May 1st, 1863; and that said treasurer issued to said city the usual certificate of sale, and the same was afterwards sold and transferred to the defendant *Martin*, who now holds it. It is then alleged that before the sale of the premises and after the making out of said supplementary tax list, *Cross* applied by petition to the common council of the city to correct the error in increasing the valuation of said buildings and to remit the tax on the sum of $5,000, the amount of such increase, but such relief was refused. It it is further alleged that in such pretended supplementary tax list there was but a small part of the real estate in the city of Milwaukee; that the taxes for 1857 on more than one half of the real estate in that city, according to the assessment roll and tax list made out in 1857, were paid before 1863; and that by the assessment roll from which said supplementary tax list was made, an increased valuation was put upon not more than one tenth part of the lots on which the city taxes for 1857 had been paid. The complaint then alleges that the acts of 1862 and 1863, under which said pretended assessment roll and supplementary tax list were made out, were in violation of the constitution of this state, and the proceedings under them void. The complaint was afterwards amended by inserting the following allegation: That real estate in the city of Milwaukee of the value of more than half a million of dollars, embraced in the city assessment rolls and tax list made out in 1857, for that year, on which real estate the city taxes and charges for that year, according to said assessment rolls and tax list, were in that year paid by the then owners, was, after 1859 and before January 1st, 1862, conveyed by those who were the owners in 1857, to innocent

*bona fide* purchasers for the full value thereof, and all the purchase money paid by such purchasers before said 1st of January, 1862 ; and other real estate in said city of the value of over half a million of dollars in 1857, and embraced in said assessment rolls and tax list made in 1857, ˈon which no city taxes for that year were paid during that year or afterwards, were by those who owned the same in 1857, sold and conveyed between January 1st, 1859, annd January 1st, 1862, to innocent *bona fide* purchasers, and the purchase money paid before the last mentioned date ; and said last mentioned real estate was sold under and by virtue of the city tax list for 1857, made out in 1857, and also under that made pursuant to the acts of 1862 and 1863, and different valuations were put upon a large part of said lands by said assessment rolls made in 1857, and said rolls and tax list made in 1863, the valuation in said last mentioned assessment rolls being in some instances greater and in some instances less than in the rolls made in 1857.    Prayer for an injunction against selling the tax certificate or issuing a deed thereon, and for its cancellation, and for judgment declaring the sale and certificate void, and for general relief.

A demurrer to the complaint as not stating a cause of action, was sustained ; and the plaintiffs appealed.

*Peter Yates*, for appellants :

1. Could the legislature authorize an assessment roll to be made in 1863 of real and personal property in existence in 1857, and taxes to be levied for 1857 in accordance with such assessment ?    In the cases from Rock county (See *Tallman v. City of Janesville*, 17 Wis., 71), the assessment rolls made in the year for which the tax was to be levied, were used, being corrected only by adding property omitted.    In this case an entirely new assessment roll was made out.    In those cases the *valuation*, as fixed in the old rolls, was in no instance altered. In this case the valuation is altered in many instances ; in some increased, in others diminished.    The valuation of the

plaintiffs' buildings was increased $5,000, and that two years after the buildings were destroyed by fire. (1.) A *uniform valuation* is a part of the constitutional rule of taxation. *Knowlton v. Sup'rs Rock Co.*, 9 Wis., 421. In adopting the principle that "the rule of taxation shall be uniform," the framers of the constitution must have had in view the ordinary time and manner of fixing the value of property, with a view to carrying the rule into effect, and have impliedly adopted it as a part of the rule. If so, the value must be fixed *in the year* and by *officers of the year* for which the tax is levied ; except, perhaps, in case of property (small in amount) omitted, which might be added to the roll for the next year, and then taxed for both years. If the value of all the taxable property can be fixed six years afterwards, why not sixty ? If it can be fixed by officers elected six years after, who, perhaps, were not citizens or residents of Wisconsin six years before, why not by the next generation, or men not in existence during the year for which the tax is levied ? (2.) The tax must be *upon all the property* on which it was required to be levied by laws in force in 1857 ; that is, with such reasonable certainty as ordinarily attends the levy of taxes when assessment rolls and levy are made at the usual time. It is impossible that the assessment roll made out in 1863 for the year 1857 should embrace all the taxable property with such reasonable certainty. In April and May, 1857, the time for making out the assessment rolls, millions of dollars worth of wheat were in the warehouses of Milwaukee, or on board vessels, belonging to citizens of Milwaukee and liable to taxation. In 1862 none of it remained, and more than half the owners had either died or left the state. The same is the case as to millions of dollars worth of groceries, dry goods, hardware and lumber in the stores and yards in Milwaukee in 1857. How could the assessors of 1863 ascertain with reasonable certainty the amount and ownership of such property ? (3.) It is nearly the same in regard to the valuation of real estate. The court cannot pre-

sume that the assessor of 1863 new of his own knowledge in 1857 the value of all the real estate in his district. But it is necessary, to sustain his valuation made in 1863, not only to suppose such knowledge, but that he remembered for six years the exact value of each lot; otherwise the valuation cannot be uniform, and the same when made in 1863 as if made in 1857. It is alleged and admitted that many tracts of land were valued higher in the assessment roll made in 1863 than in the old roll made in 1857, while others were valued lower. Are valuations so made six years after that for which the taxes are levied, consistent with the uniform rule of taxation required by the constitution ? 2. The provision respecting interest in the act of 1862 makes the whole act void. Taxation cannot be uniform where interest is imposed upon the amount of the tax before there is a *default.* 3. The tax levied in 1857 this court pronounced void ( *Weeks v. City of Milwaukee,* 10 Wis., 242), because the omission of the Newhall House property increased the burden of taxes on other property. The assessment roll only wanted the omitted property to be added to make it correct. *Cross,* when he paid his taxes on his property in January, 1858, paid *more* than his share. The city cannot again call upon him for the same tax, nor levy a new tax on his property for that year. 4. The assessment roll made in 1863 was void as to plaintiffs' lots, because the lots and the buildings on each, and the value of each, are not put down separately. Charter of the City of Milwaukee, ch. 8, sec. 2; Pr. Laws of 1862, ch. 395, sec. 2; *Andrews v. Senter,* 32 Me., 394; *Ainsworth v. Dean,* 1 Foster 401. 5. Counsel contended that the additional tax levied upon plaintiffs' buildings was void because the buildings were destroyed before the assessment. 6. He argued that persons who paid the taxes for 1857 under the assessment of that year, and afterwards sold their lots, were entitled to recover back from the city the taxes so paid (3 Cush., 567), and that the acts in question were invalid because they provided that the taxes

so paid should be credited to the lots. In effect the taxes for 1857, levied in 1863, upon such lots, are remitted to the extent of the amounts so paid and so credited, and for which the city is liable at the suit of the former owner. This also is a violation of the rule requiring uniformity in taxation. 7. Counsel further contended that the constitutional provision for a uniform rule of taxation requires that every *person* shall pay the tax for a particular year upon the property owned by him during that year, and that a person who had become the owner of land since the year 1857 could not be compelled to pay a tax upon the land for that year assessed subsequently to his purchase. He also urged that under a proper construction of the act of 1862, keeping in view the evil it was designed to remedy, it simply empowered the city to assess and tax the Newhall House property as it was during the year in which it was omitted, thereby *diminishing* the taxes upon all the other property in the city; and also to assess and tax any property accidentally omitted, and to remit and to refund to property owners who had paid their tax for those years, the excess paid by them. The law does not authorize any revaluation of property actually assessed at the proper time. To the point that such a revaluation cannot be authorized by the legislature, he cited *Thames Manf. Co. v. Lathrop*, 9 Conn., 550; *Marsh v. Chesnut*, 14 Ill., 223; *Good v. Zercher*, 12 Ohio, 369; *Elmondorff v. Carmichael*, 3 Litt., 472; *Wilkinson v. Leland*, 2 Peters, 657.

*Jas. G. Jenkins*, City Attorney, *contra*:

The objection that the lots were not assessed separately is untenable. *Cross* was the owner of both lots, and there was but one building upon the two. If it were otherwise, this being an equitable action, and no harm accruing from the alleged irregularity, the court will not interfere. *Mills v. Gleason*, 11 Wis., 470; *Kellogg v. Oshkosh*, 14 id., 623; *Warden v. Fond du Lac*, id., 618. By the 19th section of the act, no informality or variation not affecting the substantial justice of the tax,

shall invalidate it. The other questions presented by the appeal are fully disposed of by the decision in *Tallman v. The City of Janesville*, 17 Wis., 71.

*By the Court*, COLE, J. In principle this case is not distinguishable from that of *Tallman v. The City of Janesville*, 17 Wis., 71. It is said that there was an entire new assessment roll made out in this case for the years 1856 and 1857, and that this circumstance takes it out of the doctrine of Tallman's case. The assessors were to take the rolls for those years made by the former assessors, and correct them so that they should be as nearly accurate as possible. They were to supply omissions in those rolls, where property had been omitted, and correct the valuation when too high or too low, so that " each piece of property liable to taxation shall be assessed at its value as it was in the year for which the assessment roll is made out." Sec. 3, chap. 395, Sup. Priv. Laws of 1862, p. 412; sec. 1, chap. 115, Laws of 1863. We fail to see any valid objection to such a provision, unless, indeed, the position of the counsel for the appellants is sound, that the constitution requires that the assessment must be made " in the year, and by officers of the year for which the tax is levied;" in other words, that the rule of uniformity in taxation prescribed by the constitution, includes annual assessments. We are unable to concur in any such construction of the constitution. " If the legislature choose, we do not see why property should not be taxed for several years at a given rate shown by a particular estimate or valuation. This assessment is but a mode of reaching the value, etc.; and taxes can never be apportioned with exact uniformity or exact justice." This is the language of the supreme court of California in *Kelsey v. Trustees of Nevada*, 18 Cal., 630–31, when considering substantially the same objection taken to a law of that state apportioning a tax according to the assessment roll of a previous year. See also *Hart v. Plum*, 14 Cal., 148; *People v. Seymour*,

16 id., 332; *The People v. Todd*, 23 id., 181, where objections taken to similar provisions were examined and decided. The constitution of California in respect to uniformity in taxation is quite as specific, if not more so, than our own (Sec. 13, Art. 11, Cons. of Cal.), and yet it will be seen from the above cases that the courts disaffirm the view that it requires annual assessments. The legislature of this state has plenary power over the subject of taxation, so long as it does not violate the principle of uniformity, and may, we think, prescribe the mode of correcting an informal assessment. It was so decided in the Tallman case, and we are satisfied with the rule there laid down upon this subject. Indeed, as we there said, this power of correcting defective assessment rolls is a highly beneficial feature of our system of taxation, and we should think the taxing power of the government very defective if it could not be exerted to cure such errors.

The appellants owned in 1857, and now own, the real estate the valuation of which was increased under the law of 1862. The property was improved, and it appears from the complaint that the buildings thereon were burnt down in the month of December, 1860. But notwithstanding the destruction of the buildings by fire, it is alleged that in 1863 the aggregate valuation of the property was increased $5000 over the assessment of 1857. And it is urged that the appellants were greatly aggrieved by the operation of the law of 1862, providing in a qualified manner for a re-assessment, since a higher valuation was placed upon the same property at a subsequent period after the buildings thereon had been destroyed by fire. But it was the duty of the assessors, under the law of 1862, to assess the property at its value as it was in the year 1857. *Non constat* but the assessors had personal knowledge of the situation and character of this real estate, and personally knew that it was assessed five thousand dollars below its value in 1857. We must assume that they did, particularly in view of the fact that the appellants fail to state in the complaint that an

excessive valuation was placed upon the property when re-assessed. Nor does the fact that the buildings were destroyed in 1860 affect the question. The value of property from various causes is liable to be changed intermediate the assessment and payment of the tax. After the tax is extended on the assessment roll even, a valuable building may be destroyed by fire or flood. In that case it may seem hard that a party is required to pay a tax on property which is greatly depreciated in value since the tax was levied ; but cases of individual hardship must yield to rules of general convenience. Suppose the legislature, instead of authorizing the correction of the assessment roll, had directed the tax to be levied on the assessment roll made out in 1857, the omitted property being supplied, and buildings in the meantime had been destroyed belonging to some delinquent tax-payer. The same case of individual hardship would have been presented as now, a party paying a tax upon property which from circumstances had been greatly lessened in value intermediate the times when the tax should have been and when it actually was paid. We have already said that we did not think the constitution required annual assessments. Suppose the legislature provides, as it has in some of the city charters, that the real estate in such city should not be assessed oftener than once in two years. It is obvious that the tax the second year, apportioned according to the assessment roll of the previous year, might be very unequal, owing to a change in the value of the property after the assessment was made. All general rules will sometimes operate harshly in individual cases.

After the expression of our views in the Tallman case, we do not feel called upon to notice the other points made by the counsel for the appellants.

We think the demurrer to the complaint was properly sustained, and the order of the circuit court is therefore affirmed.

Mr. Justice DOWNER, having been of counsel for one of the parties, took no part in the decision of this cause.