THE STATE EX REL. HEIDEN, Plaintiff in error, vs. RYAN, Defendant in error.

*March 5 — March 22, 1898.*

*Supreme court: Jurisdiction in* habeas corpus.

Sec. 3409, R. S. 1878, vests in the supreme court and the justices thereof exclusive jurisdiction to issue writs of *habeas corpus* to inquire into the legality of the detention of persons confined in the state prison, and that applies where the detention is in the house of correction of Milwaukee county in lieu of in the state prison at Waupun, under the statute permitting confinement in such house in lieu of such prison.

    [Syllabus by MARSHALL, J.]

CERTIORARI to review an order of HUGH RYAN, Court Commissioner in Milwaukee county. *Reversed.*

One Peter Roszcynialla, while on bail to appear at a term of the municipal court for Milwaukee county to answer to a

The State ex rel. Heiden vs. Ryan.

charge of burglary, was duly sentenced by a justice of the peace to the house of correction for the term of six months for the offense of larceny, and was committed accordingly. The petitioner, *Fred Heiden*, was the keeper of such house of correction under the official name of Inspector of the House of Correction of Milwaukee County. While Roszcynialla was serving the sentence for larceny, he was taken before the municipal court for the county and there pleaded not guilty to the information filed against him on the charge of burglary, and was thereupon tried and convicted of such offense, being represented from first to last by his attorney, and making no objection to the trial on account of the fact that he was in custody, serving the sentence for larceny. He was duly sentenced on the last conviction to the house of correction for the term of two years, commencing November 13, 1897, the day such sentence was pronounced, and was committed accordingly. Thereafter, claiming that he was unlawfully restrained of his liberty on the second conviction, he sued out, before the respondent, *Hugh Ryan*, as court commissioner for Milwaukee county, a writ of *habeas corpus*, on a petition setting forth facts as aforesaid, and further facts to show that the term of imprisonment for the first sentence had expired. The petitioner produced Roszcynialla in response to the writ, and made return, among other things, that he held him pursuant to a commitment on the sentence for the offense of burglary. On the hearing the commissioner determined that the first sentence had not expired, but that all the proceedings in regard to the second trial, and the commitment pursuant thereto, were void because defendant was in custody at the time of such trial, serving the sentence for larceny. Thereupon an order was entered remanding Roszcynialla to serve out the first sentence, and that at the expiration thereof he be discharged. He was remanded accordingly, and on petition of the keeper of the house of correction, setting up all the facts, a writ

of *certiorari*. was issued, requiring all the proceedings before the commissioner to be certified to this court for review.

For the plaintiff in error there was a brief by *A. C. Brazee*, district attorney, and a supplemental brief by *Levi J. Billings*, for the Attorney General, and oral argument by *A. C. Umbreit.*

*C. W. Briggs*, for the defendant in error. [No brief on file.]

Marshall, J. Several important questions are presented for decision by the briefs of counsel, that it would promote the due administration of justice to determine, most of which must remain for further consideration, however, because of the conclusion reached as to the jurisdiction of the commissioner. Whether a person can be tried on one offense while he is serving a sentence for another, and whether, if he makes no objection to such trial by proper plea in abatement or otherwise, he can thereafter raise the question, and whether the court commissioner can act as a court of review and vacate final orders and judgments of trial courts, and, if the power exists, whether, in any case, a wise administration of the duties of the position requires that it should not be exercised except in cases of necessity growing out of the inability of the judge to act, or inconvenience in reaching him in a particular case, are all important questions, a solution of which might serve well the orderly and safe administration of justice; but they must go unanswered for the present for reasons disclosed in what follows.

Under sec. 4637, R. S. 1878, all offenses punishable by imprisonment in the state prison are felonies. By sec. 3409, R. S. 1878, the exclusive jurisdiction to issue writs of *habeas corpus*, to inquire into the legality of the detention of persons confined in the state prison, is vested in the supreme court and the justices thereof. The constitution conferred jurisdiction to issue the writ upon the supreme court and the

circuit courts, but the legislature was given power to confer such jurisdiction upon other courts and judicial officers. By the statutes of 1849, jurisdiction to issue the writ was conferred upon justices of the supreme court, of the circuit courts, and county courts. In the statutes of 1858 court commissioners were added. By ch. 45, Laws of 1864, power to issue the writ, in cases of confinement in the state prison, was restricted to the supreme court and the justices thereof, as now provided in said sec. 3409. The effect was to take from all courts and officers, except those specially named, power to issue the writ in any case of confinement for an offense of the degree of felony. While, when the law was enacted, there was but one place of confinement for persons guilty of such offenses, to wit, the state prison at Waupun, it would not seriously be contended but that other places of confinement for the same grade of offenses, subsequently established, would be state prisons by implication though called by some other name. The real purpose manifestly was to limit the jurisdiction more to the purpose of the confinement than to the place. As confinement in the state prison was solely a punishment for the higher grade of offenses, the name of the place satisfied the legislative intent. By ch. 256, Laws of 1879, the jurisdiction of the circuit court for Milwaukee county, in criminal cases, was conferred upon the municipal court for such county. By sec. 2514, S. & B. Ann. Stats., in any case of conviction in such municipal court, where the punishment would otherwise be imprisonment in the state prison for a term not exceeding three years, the offender may be sentenced to confinement in the house of correction instead of the state prison. As to such offenses, the house of correction, by the statute, is, to all intents and purposes, a state prison.

The mere fact that the offender may be sent to the house of correction, instead of the state prison at Waupun, does not affect in any way the grade of the offense. All the rea-

sons for removing persons convicted of crimes of the grade of felony beyond the reach of the writ of *habeas corpus* issued by local courts and officers apply just as strongly whether the place of confinement be the house of correction in Milwaukee county or the state prison at Waupun. To hold otherwise would sacrifice the obvious spirit of the statute to the letter of it. It is not the duty of the courts in declaring the law to do that, but rather, in the light of the evils to be reached,— the objects to be attained,— to so construe it as to give it effect according to the legislative intent, so far as that can be done without violence to its language. To accomplish that end the terms of the law can be given a literal, a liberal, or a strict construction, as to the court may seem best calculated to carry out the real purpose of the lawmakers. *Ogden v. Glidden,* 9 Wis. 46; *Blunt v. Walker,* 11 Wis. 334; *Clark v. Janesville,* 10 Wis. 136.

True, there is reason for saying the construction we give to sec. 3409, R. S. 1878, conflicts with the literal sense of words in which there is no obscurity, but, as said in effect by an eminent writer on statutory construction, uncertainty of sense, requiring judicial construction, does not always spring from uncertainty of expression. Words may be plain, yet their literal meaning lead to such consequences that courts must, necessarily, violate the letter in order to reach the real spirit of the law and give effect to the legislative will. The legislative idea, if it can be gathered from the language used, by all the light to which the judicial mind may properly resort, is as much within and a part of the law as if it were literally expressed. *People ex rel. Att'y Gen. v. Utica Ins. Co.* 15 Johns. 379; *Indianapolis & St. L. R. Co. v. Horst,* 93 U. S. 300. Vattel says: " It is not allowable to interpret what has no need of interpretation. When the meaning is evident and leads to no absurd conclusion, there can be no reason for refusing to admit the meaning which the words naturally represent. To go elsewhere in

search of conjecture in order to restrict or extend the act would be to attempt to elude it. Such a method, if once admitted, would be exceedingly dangerous, for there would be no law however definite and precise in its language, which might not, by interpretation, be rendered useless." This sound doctrine is recognized by this and all courts (*Gilbert v. Dutruit,* 91 Wis. 661), and it supports the construction we give to the law in question.

While the meaning of the words "confined in the state prison," generally speaking, is evident, to hold to the literal meaning of the term would lead to a most absurd conclusion; so we are not only permitted, but required, to search for some other meaning which is reasonable in order to avoid that result and give that effect to the law obviously intended. No serious difficulty in that regard is encountered when we apply that other rule, laid down in *Harrington v. Smith,* 28 Wis. 43, and so often referred to and applied by this court: " The true rule for the construction of a statute is to look to the whole and every part of it, to the apparent intention derived from the whole, to the subject matter, to the effect and consequences, the reason and spirit of the law, and thereby ascertain the true meaning of the legislature, though the meaning so ascertained conflict with the literal sense of the words."

*By the Court.*— The order of the commissioner is reversed, and the proceedings remanded with directions to dismiss the writ of *habeas corpus* as improvidently granted.