THE STATE EX REL. DAVIS & STARR LUMBER COMPANY, Appellant, vs. PORS, Clerk of City, Respondent.

*September 8 — September 25, 1900.*

*Taxation: Assessment of property omitted from previous years: Statutes: Construction: Board of review.*

1. Sec. 1059, Stats. 1898, as amended by ch. 50, Laws of 1899, provides that real or personal property omitted from assessment in any of the three next previous years by mistake or inadvertence, unless previously reassessed for the same year or years, *shall be entered once additionally* for each previous year of such omission, giving the year of omission, and affixing a just valuation to each entry for a former year as the same should then have been assessed according to the best judgment of the assessor, and taxes shall be apportioned and collected on the tax roll for such entry. The statute originally applied solely to real estate and was extended by the amendment of 1899 to include personal property. *Held,* that the legislature did not intend to limit the effect of the amendment of 1899 to such personal property as remained unchanged in ownership or location, but intended thereby to include any and all personal property which by inadvertent omission escaped assessment, and that such intention is capable of enforcement as to any omitted property which, between the time of its omission and the time of

The State ex rel. Davis & Starr Lumber Co. vs. Pors.

reassessment, has passed out of existence, out of the ownership of the person assessed, or out of the assessment district.

2. The words "entered once additionally" in said sec. 1059, while used originally with reference to real estate, when applied by said amendment of 1899 to personal property, are *held* to apply to the purpose contemplated by the statute, rather than to the clerical method by which it is to be accomplished, and to be one of the steps leading to the ultimate result,— that the taxes shall be apportioned and collected on the tax roll for such entry.

3. The general provision of sec. 1055, Stats. 1898, requiring property to be assessed from actual view, does not apply to an assessment of personal property omitted from a previous assessment, under sec. 1059 as amended, since the latter section provides that assessments made thereunder shall be according to the assessor's best judgment.

4. Said sec. 1059, Stats. 1898, with its amendment including personal property, was intended to take immediate effect according to its terms, and regulated the conduct of assessors thereafter, without regard to whether the omissions to assess occurred before or after the enactment of the amendment. Being purely a remedial statute, it was within the power of the legislature to give it such effect.

5. Where in proceedings before a board of review, on objection to the assessment of plaintiff's personal property, no contention was made or evidence offered that the assessor's designation of it on the roll was not in accord with the facts, the board cannot ignore the assessor's report, and they commit no error in refraining from changing the assessment roll in that respect.

6. MARSHALL and BARDEEN, JJ., dissenting, consider that the words of sec. 1059, Stats. 1898, as amended by ch. 50, Laws of 1899, in themselves, or as applied to the subject to which they refer, are not ambiguous; that taken in their literal sense they do not admit of any other meaning than that, when property is assessed in any year, it shall also be assessed once additionally for each of the three preceding years that it was by mistake or inadvertence omitted from the assessment roll; and that the use of the word "additional" in the law is an insurmountable barrier to reaching a conclusion that it was the legislative purpose to remedy mistakes in the omission of property from the assessment roll, if discovered within three years from the commission of the mistake, regardless of a change in the ownership of the property in the meantime, or the consumption or destruction of the property itself.

APPEAL from an order of the circuit court for Wood county:. Chas. M. Webb, Circuit Judge. *Affirmed*.

On November 4, 1899, a writ of *certiorari* was issued out. of the circuit court to the respondent as clerk of the city of Marshfield, commanding him to send up for review the proceedings taken in reference to the assessment against. the relator in 1899 of certain property omitted in 1898. From the return it appears that the relator was assessed,. under the heading, "Value of Logs, Timber, Lumber, Ties, Poles, and Posts, Mfrs. Stock," $11,335, and in addition. was assessed under the same heading $14,604, marked "Omitted for the Year 1898." The latter item appears from the roll to have been made up in nearly equal parts of lumber and logs. The relator appeared before the board of review by its secretary, Bert E. De Yo, and its attorney,. Hon. William F. Bailey, and objected to the assessment. against it for lumber and logs omitted in 1898, and accompanying such objection filed the affidavit of said De Yo, not controverting the existence on May 1, 1898, of lumber and logs to the amount specified, but asserting that no part. of the logs so existing on May 1, 1898, remained uncut. or unmanufactured on the 1st day of May, 1899, and that none of them were in the city of Marshfield or elsewhere at the latter date; and further alleging that no part of the lumber owned by relator on May 1, 1899, or at any time subsequent thereto, or which was then situated in said city, was owned by said corporation on May 1, 1898, and that none of the lumber which it did own on May 1, 1898, was situated in the city of Marshfield on the 1st day of May, 1899. The records of the board state that the relator objected "on the ground that the assessor and the board have not the right or power to assess the personal property which was omitted in the assessment of said year 1898." The board listened to argument, submitted the question of law to the attorney general, and finally overruled

the objection.   No witnesses were sworn, and no evidence offered or taken, before the board of review, unless the affidavit of said De Yo is such.

After the filing of the return, the respondent moved the court, upon the petition, writ, return, and its exhibits, and upon certain additional affidavits, to quash the writ.   Those affidavits tended to establish the existence at Marshfield, and appellant's ownership on May 1, 1898, of the lumber and logs so assessed, the inadvertent omission thereof, and that no taxes had been assessed or collected from the relator thereon for the year 1898.   The court entered an order January 31, 1900, " that said writ of *certiorari* herein be, and the same hereby is, quashed and dismissed upon the merits; " from which order the relator appeals.

*W. F. Bailey*, for the appellant, contended, *inter alia*, that the amendment to sec. 1059, Stats. 1898 (ch. 50, Laws of 1899), could not operate retrospectively. *Seamans v. Carter*, 15 Wis. 548; *Finney v. Ackerman*, 21 Wis. 268; *Warner v. Trow*, 36 Wis. 195; *Vanderpool v. L. C. & M. R. Co.* 44 Wis. 663; *Hall v. Banks*, 79 Wis. 235; *Dean v. Charlton*, 27 Wis. 526; *Rheinstrom v. Cone*, 26 Wis. 163; *Bernier v. Becker*, 37 Ohio St. 72; *Shallow v. Salem*, 136 Mass. 136; *Kelley v. B. & M. R. Co.* 135 Mass. 448; *Hastings v. Lane*, 15 Me. 134; *Johnson v. Burrell*, 2 Hill, 238; *Sanford v. Bennett*, 24 N. Y. 23; *Palmer v. Conly*, 4 Denio, 376; *Conley v. Palmer*, 2 N. Y. 182; *Dash v. Van Kleeck*, 7 Johns. 477; *Hackley v. Sprague*, 10 Wend. 113; *Higgins v. Bear River & A. W. & M. Co.* 27 Cal. 153. The statute in question did not authorize the personal property of plaintiff, not in existence at the time the reassessment was made, to be assessed as omitted property.   Stats. 1898, secs. 1033, 1040, 1044, 1055; *Hayden v. Roe*, 66 Wis. 288; *Wilcox v. Rochester*, 129 N. Y. 247; *Day v. Pelican*, 94 Wis. 503.

For the respondent there was a brief by *P. A. Williams*, attorney, and *B. R. Goggins*, of counsel, and oral argument by *Mr. Goggins*.

The State ex rel. Davis & Starr Lumber Co. vs. Pors.

Dodge, J.   1. The circuit court having expressly declared that it quashed the writ of *certiorari* "on the merits," we, for the purposes of this review, shall consider its action as tantamount to a judgment of affirmance, in the light of *State ex rel. Gray v. Common Council of Oconomowoc*, 104 Wis. 622, 628, and authorities there cited.   Upon such consideration two principal questions arise, and have been debated with much vigor by counsel: first, whether sec. 1059, Stats. 1898, as amended by ch. 50, Laws of 1899, authorizes reassessment upon any omitted personal property which between the time of its omission and the time of reassessment has passed out of existence, out of the ownership of the person assessed, or out of the assessment district; second, whether such act authorizes reassessment of personal property omitted prior to the amendment.

Sec. 1059, with the amendment in brackets, provides: "Real [or personal] property omitted from assessment in any of the three next previous years by mistake or inadvertence, unless previously reassessed for the same year or years, shall be entered once additionally for each previous year of such omission, designating each such additional entry as omitted for the year 18— [giving year of omission], and affixing a just valuation to each entry for a former year as the same should then have been assessed according to his best judgment, and taxes shall be apportioned and collected on the tax roll for such entry."

This section had for many years served to authorize, and with the aid of the general taxing machinery to enable, the assessment and collection of omitted taxes on real estate. The addition of personal property to the subjects affected thereby could have had no purpose save to authorize and enable in like manner, and to the same extent, the collection of personal taxes which ought in previous years to have been paid, but, by reason of like omission to assess, had not been. This legislative purpose is entirely obvious, and should be

given complete effect, unless insuperable obstacles prevent. *Harrington v. Smith*, 28 Wis. 43, 59; *Brown v. Pendergast*, 7 Allen, 427; 7 Lawson, Rights, Rem. & Pr. 5922; *State ex rel. Heiden v. Ryan*, 99 Wis. 123.

The general purpose of legislation of this class, namely, to provide means for enforcing the obligation of each individual to contribute to the expenses of government according to the taxable property owned by him, whenever he shall have escaped or evaded that obligation, has many times received the commendation of this and other courts. It is promotive of, nay essential to, the constitutional behest that taxation be uniform. *Tallman v. Janesville*, 17 Wis. 71; *Cross v. Milwaukee*, 19 Wis. 509, 516; *Wilcox v. Eagle*, 81 Mich. 271. This purpose must in large measure fail if a disposal, consumption, or removal of personal property after the time when assessment should have been made prevents its reassessment.

The principle at the foundation of these reassessment laws is that the owner of property is under obligation — some authorities say he is indebted — to the government to pay a sum proportioned to the property owned by him on May 1st of each year. *Warden v. Fond du Lac Co.* 14 Wis. 618, 620; *Peters v. Myers*, 22 Wis. 602; *Flanders v. Merrimack*, 48 Wis. 567, 572; *Sturges v. Carter*, 114 U. S. 511, 518. This obligation he owes primarily to the municipality in which certain classes of property are on that date situated, for the municipality, under our system, collects the taxes as trustee for the other branches of government, state, county, and school district.

Several obstacles are suggested by appellant to the enforcement of this statute, where the omitted property is either not owned by the same person, or is not within the same taxing district at the time of reassessment. First among these is the language of the statute requiring that it be "entered once additionally" for each of the omitted

years; the argument being that if the property cannot be
entered originally against the person for assessment that
year it cannot be entered "additionally" for preceding
years. The language, of course, is not entirely apt as ap-
plied to the supposed situation, but it was used originally
with reference to real estate, and accomplished the result of
securing its reassessment for the years of omission. We
have no doubt from the manner of the amendment that the
legislative purpose contemplated the result rather than the
clerical method by which it was accomplished. *Plum v.
Fond du Lac*, 51 Wis. 393, 397. The appellant's objection
is very technical and refined, hardly less so than would be
the suggestion that the entry of any amount for preceding
years must of necessity be "additional" to any sums other-
wise assessable against the same person. The step thus
criticised is but one of those leading to the ultimate result
intended and commanded by the legislature, namely, that
"taxes shall be apportioned and collected on the tax roll for
such entry." We are satisfied that any matters of mere
form in the procedure can and should be adjusted to accom-
plish this result.

Again, it is urged that if the property is not in existence
it cannot be within the jurisdiction of the assessors. This
contention loses sight of the consideration that the whole
subject of taxation is within the control of the legislature,
subject only to the constitutional requirement of uniformity,
and that branch of the government can confer jurisdiction
to apportion and collect taxes when and where it deems
best. *Cross v. Milwaukee*, 19 Wis. 509; *North Carolina R.
Co. v. Comm'rs of Almance*, 82 N. C. 259, 268. In the latter
case the assessment rested with the township board of trust-
ees at the time the tax should have been levied, but the
function had before the time of reassessment been trans-
ferred to other officers. The latter were nevertheless held
justified in taking the steps necessary for such reassessment
and collection authorized by statute.

It is suggested that this construction, whereby assessors
may assess property not in existence or not within their dis-
trict, is inconsistent with the general policy of the statute
(sec. 1055), which directs ordinary valuation for assessment
of personal property to be upon actual view as far as prac-
ticable.   But the section under consideration (sec. 1059) ex-
pressly excepts reassessments from that requirement by
providing that they shall be "according to the assessor's
best judgment."   This objection was urged and refuted in
*Cross v. Milwaukee, supra*, where the property involved had
been substantially changed in value by the burning of the
buildings thereon.

We reach the conclusion that the legislature did not in-
tend to limit the effect of the amendment of 1899 to such
personal property as remains unchanged in ownership and
location, but to include any and all which by inadvertent
omission escaped assessment, and that such intention is not
incapable of enforcement under the circumstances presented
in this case.

2. The second question, whether sec. 1059, as amended
authorizes the reassessment of personal property omitted
from assessment prior to the amendment, is one of construc-
tion merely; for the power of the legislature to so authorize
and direct has long since been placed beyond discussion.
*Flanders v. Merrimack*, 48 Wis. 572, and cases there cited.
A general rule of construction, sometimes said to apply to
all statutes, and often repeated in our own decisions, is to the
effect that statutes are not to be construed as having a retro-
spective effect unless the intention of the legislature is clearly
expressed that they shall so operate.   *Seamans v. Carter*, 15
Wis. 548; *Finney v. Ackerman*, 21 Wis. 268; *Vanderpool v.
L. C. & M. R. Co.* 44 Wis. 663; *Jochem v. Dutcher*, 104 Wis.
611.   This rule is accompanied, however, by another equally
well settled, stated by Chancellor Kent (1 Comm. 455), as
follows:   "This doctrine [prospective construction of stat-

utes only] is not understood to apply to remedial statutes, which may be of a retrospective nature, provided that they do not impair contracts or disturb absolute vested rights, and only go to confirm rights already existing and in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations." And by Cooley (Taxation [2d ed.], 293): "A remedial provision may well be presumed to have been intended to reach back for the purposes of justice. And in cases where a tax is levied to meet expenses previously incurred, or to pay the cost of something of which the persons to be taxed have already had the benefit, any presumption against an intent to give the law retroactive operation may be overcome by the apparent justice of such a construction." In *Klaus v. Green Bay*, 34 Wis. 628, 636, this distinction was recognized and applied to an act providing that subcontractors for state, county, town, city, or village might maintain an action to compel the payment to them of the amount due the principal contractor, and the act was held to confer the right of action, although the indebtedness had been incurred before its passage.

We think it clear that the act here in question falls within the classification covered by the latter rule. It creates no new obligation, but is purely remedial. As we have already said, it is predicated upon the obligation of every individual to pay that proportion of the taxes warranted by his property existing at the time when assessment was omitted, and provides further remedial steps for the enforcement of such obligation and collection of the tax when it has failed of payment through some irregularity or omission in the steps otherwise prescribed. Considering, then, the construction of sec. 1059, it should be observed that both the form and purpose of the statute are addressed to regulating and directing the conduct of assessors, not to declaring rights or obligations or commanding conduct of those who omit to pay their taxes. The reference to omitted assessments is

merely by way of description of a situation in which the assessor is commanded to act. Thus viewed, the statute is clearly prospective. It seeks not to regulate or modify the effect of any acts already done, but to direct the doing of acts in the future, and, as to such acts, to " take effect and be in force from and after its passage and publication." The letter of the statute would have been disobeyed had an assessor in May, 1899, failed to enter upon his assessment roll any real or personal property omitted from assessment in any of the three next preceding years. Construing a very similar statute of Ohio, the supreme court of the United States said: " As this act took effect upon its passage, it authorized the auditor, in any future corrections and adjustment of taxes, to extend his inquiries back for a period of four years. It did not require him to wait four years after its passage before he could give it full effect." *Sturges v. Carter*, 114 U. S. 513, 517.

This court, construing ch. 222, Laws of 1885, providing that when public lands once withdrawn from sale are reoffered they shall first be offered at public sale, held the act to apply to lands withdrawn before its passage. It was said, NEWMAN, J.: " This construction does not, as counsel urges, give the statute a retroactive operation. . . . It operates only on a condition existing at the time of its passage or arising afterwards." *State ex rel. Sweet v. Cunningham*, 88 Wis. 81, 87. The original of sec. 1210b, authorizing reassessment in suits, was unhesitatingly applied in the case of taxes unlawfully assessed before the act, in *Plumer v. Marathon Co.* 46 Wis. 171, and *Flanders v. Merrimack*, 48 Wis. 567. Other statutes affecting remedies have been held to apply immediately to the step directed, although the conditions upon which the law acted grew out of events or acts precedent to the legislation, where the language used was no clearer than that now under consideration. *Parker v.*

*Kane,* 4 Wis. 1; *Klaus v. Green Bay,* 34 Wis. 628; *Plum v. Fond du Lac,* 51 Wis. 393; *Reed v. Madison,* 83 Wis. 171, 178; *Relyea v. Tomahawk P. & P. Co.* 102 Wis. 306.

It is true there are cases, some of them cited above, which ignore the consideration that the legislation acts directly only on future acts, and deny to it even indirect retrospective effect upon precedent rights or conduct. We do not impugn the correctness of those decisions, applied as they were to legislation of a different class, not addressed merely to regulating or perfecting remedies for the enforcement of existing obligations. They do not conflict with the rule of such cases as those last cited, which fully justify the conclusion that sec. 1059, with its amendment including personal property, was intended to take immediate effect according to its terms, and to regulate the conduct of assessors thereafter, without regard to whether the omissions to assess occurred before or after 1899; from which conclusion it results that the action of the assessor attacked by appellant was lawful and proper, and that no error was committed by the board of review in refusing to set it aside.

3. One other contention on part of appellant demands brief consideration. He insists now, on authority of *Mitchell v. Plover,* 53 Wis. 548, that the lumber belonging to plaintiff was not manufacturers' stock, but merchants' goods. He made no contention and offered no evidence before the board of review that the assessor's designation of it on the roll as manufacturers' stock was not in accord with the fact. Obviously, lumber may be merchandise when kept for sale, or may be manufacturers' stock if held for the purpose of being manufactured into furniture, vehicles, or doors. In the absence of any evidence to the contrary, the board of review could not ignore the assessor's report that it was the latter, and committed no error in refraining from changing the assessment roll in that respect.

The board of review does not appear to have acted either beyond its jurisdiction or contrary to law, and the circuit court properly quashed the writ of *certiorari* on the merits.

*By the Court.*— The order appealed from is affirmed.

MARSHALL, J. There is a trite expression in judicial literature which embodies the idea that compels me to dissent from the decision in this case, namely, It is not the province of the court to make the law but to expound and apply it. The judicial function and that of the lawmaking power are each independent of the other. Those whose duty it is to exercise the one cannot properly cross the boundary line that separates it from the other; though it is true that such line is sometimes so indistinct that judges, deeply imbued with the idea of what was the legislative purpose in making a law, especially if that purpose be strongly promotive of public interests and good citizenship, will sometimes cross it to accomplish such purposes, apparently overlooking those safeguards to judicial footsteps that have been located along the judicial pathway by the accumulated wisdom of ages. It seems to the writer that those guides were not strictly observed in reaching the conclusion of the court in this case, else a contrary decision would have been the result.

A brief reference to well-recognized rules for judicial construction, which form some of the guides above referred to, and their application to the statute upon which this case turns, will sufficiently show the reasons why I cannot agree with the decision of the court.

We have first the rule, that words which are plain, and in their literal sense lead to no inconsistent or absurd consequence, must be presumed to have been used with their common and ordinary meaning; and that such presumption must absolutely prevail. "*Absoluta sententia expositore non eget.*" That rule has been a guide for the courts of this country and England through a period covered by the great

body of our judicial records, and is often found stated in the
language of Vattel (Law of Nations, bk. 2, § 263) thus: 'It is
not allowable to interpret what has no need of interpreta-
tion. . . . When the meaning is evident, and leads to
no absurd conclusion, there can be no reason for refusing
to admit the meaning which the words naturally present.
To go elsewhere in search of conjectures, in order to restrict
or extend it, is but an attempt to elude it. Such a method,
if once admitted, would be exceedingly dangerous, for there
would be no law, however definite and precise in its lan-
guage, which might not, by interpretation, be rendered use-
less.' That recognizes that the consequence of adhering to
a literal reading of words used in a legislative enactment
may of itself call for judicial construction of the act, and
justify in some cases a violation of the letter of the law in
order to reach the real spirit of it and give effect to the legis-
lative will. But that is limited by the principle that neither
rules of law nor of language can properly be violated to
carry out a legislative idea, however clear it may be that
the law was intended to convey such idea. That is to say,
when interpretation of the words or construction of the lan-
guage of an act is proper, a meaning cannot be properly
ascribed thereto that is not within the reasonable meaning
thereof; for while by judicial construction we may get the
right meaning out of words, it is not within the legitimate
sphere of judicial construction to put meaning into them.
*State ex rel. Heiden v. Ryan*, 99 Wis. 123. As is often said:
" Courts cannot go, by construction, beyond the reasonable
meaning of language, whatever may be the consequences."
Lord TENTERDEN, in *Rex v. Barham*, 8 Barn. & C. 99, treat-
ing of the same subject, said: " It is better to abide by this
consequence than to put upon it a construction not war-
ranted by the words of the act, in order to give effect to
what we may suppose to have been the intention of the leg-
islature." Lord CAMPBELL, recognizing the same limitation

upon judicial construction, in *Coe v. Lawrence*, 1 El. & Bl. 516, used the following language: "I cannot doubt what the legislature intended to do; but they have not carried it into effect. . . . It is better that we should adhere to the words they have used, than that we should strive to amend it."

It follows that if the words of an act reasonably admit of but one meaning, that meaning must be adopted regardless of the wisdom of the act or whether it will effect the legislative purpose; and that the power to go beyond the ordinary meaning of words is limited by the rule, that if the language of an act be open to judicial construction, a meaning cannot properly be ascribed to it that is not within the reasonable scope of such language, whatever may be the consequences of adhering to that limitation. To go beyond that is to alter the law and do what the legislature may have intended but failed to do. The ultimate end of judicial construction is not to determine what the legislature meant, but what the language used by the legislature means.

In view of what has been said and the fact that my brethren obviously consider the statute (sec. 1059, Stats. 1898) open to judicial construction, we would expect to find that established legal principles were applied to it in order to determine what the language used therein means. But if such application were made, we are unable to discover that it proceeded further than to determine that the legislature evidently intended to provide that personal property, omitted from the tax roll one year, shall be assessed for such year thereafter if the omission be discovered within three years, regardless of any change in the title in the meantime or even of the existence of the property at the time of remedying the omission. It is assumed, as we take it, that such situation justifies a construction that will effect the legislative idea, whether the meaning attached to the language under consideration is reasonably within its scope

or not.   No claim is made that the words, "shall be entered once additionally for each previous year of such omission," include within their reasonable meaning an entry not additional to an entry for the current year.   But it is said we must hold that the legislature did not intend to limit the remedy for mistakes of assessors in omitting property from the assessment, to property still liable to assessment to the same person as at the time it was omitted, else the legislative purpose "in large measure must fail."   That is, as we take it, the point under consideration is made to turn on a rule of construction which of itself does not justify attributing to words a meaning contrary to their literal sense,— a rule which, if followed regardless of its limitations, will often lead to an apparent failure to observe that the judicial office is "*jus dicere*," not "*jus dare*."   Lord WESTBURY, in *Ex parte Vicar, etc. of St. Sepulchre's*, 33 Law J. Ch. 372, stating the construction of a law to effect abstract justice, and a presumed legislative purpose, disregarding the limitations to which we have referred, said: " The vice chancellor is of opinion that what he denominates the abstract justice of the case requires this interpretation.   .   .   .   I cannot admit the principle, that in a matter of positive law, abstract justice requires or justifies any departure from established rules of interpretation.   Those established rules no doubt admit of putting a secondary meaning upon words where the ordinary and primary signification would lead to some absurdity or impossibility.   But where the conclusion is merely that there is a *casus omissus*, for which the legislature has not provided, to alter the ordinary rules of interpretation upon the principle of a duty due to abstract justice, is simply to legislate and not to interpret."

The force of the foregoing will appear by a careful study of the words of the statute under consideration: "Personal property omitted from assessment in any of the three next previous years by mistake or inadvertence,  .  .  .  shall

be entered once additionally for each previous year of such
omission." As we look at those words, the first question
that the judicial interpreter should solve is, Are they in
themselves, or when applied to the subject to which they
refer, ambiguous? If not, as we have seen, they must be
taken in their literal sense. It would seem that the words
are plain and do not admit of any other meaning than that,
when property is assessed for any year, it shall also be as-
sessed once additionally for each of the three preceding
years that it was by mistake or inadvertence omitted from
the assessment roll. I do not understand that the contrary
is held by my brethren, except for some judicial power of
the court to give to words a meaning which will effect a
plain legislative purpose rather than that the purpose shall
fail. But the court has no such legitimate power, as we
have seen. All must admit that it is impossible to do a
thing " once additionally " till the thing has been originally
done. That is too clear for serious discussion.

If we are right in the foregoing, then the law under con-
sideration cannot be construed as the court has construed it,
except by rejecting entirely the significant word "addition-
ally." That is what has in fact been done. If there is any
rule of construction that will justify such a course, the writer
is not aware of it. Words obviously omitted by mistake,
which prevent an act having a sensible effect, and words
necessarily implied, may be supplied by judicial construc-
tion; but when an act will admit of a reasonable construc-
tion that will give sensible effect to every part of it, the
court cannot properly, by judicial construction, *curia casus
omissus*, reject words merely because otherwise the scope of
the law will be more limited in its operation than the legis-
lature probably intended, and more than absolute justice
requires.

In what has been said we have assumed that it was prob-
ably the legislative purpose to remedy mistakes in the omis-

sion of property from the assessment roll if discovered within three years from the commission of the mistake, regardless of a change in the ownership of the property in the meantime, or the consumption or destruction of the property itself. We are not willing, however, to admit that the position of the court on that point is correct. The use of the word "additionally" in the law, in my judgment, is an insurmountable barrier to reaching such conclusion. All that is said in the opinion as to the public interests requiring that every person shall bear his just proportion of the public burdens, meets with our hearty approval. What is here condemned is that which appears to be judicial legislation to effect the desired end.

I will not further continue the discussion. The grounds of dissent have, in the main, been stated. No good can come from going on merely to further fortify the position here taken by a more careful analysis of the reasons given by the court for an affirmance of the judgment. It seems that the judgment should be reversed.

BARDEEN, J.    I concur in the foregoing.